# THE SUPREME COURT

### OF

# THE STATE OF MISSOURI,

### OCTOBER TERM, 1868, AT ST. LOUIS.

[CONTINUED FROM VOL. XLII.]

---

JOHN CREASY and WIFE, Plaintiffs in Error, *v*. CALVIN ALVER-
SON *et al.*, Defendants in Error.

1. *Wills — Probate of — Evidence concerning.* — The certificate of probate
granted by the clerk of the County Court is not conclusive either for or
against the admission of the will to probate; and without an order made by
the County Court, at its next term thereafter, confirming his act, it would
constitute no sufficient evidence that the will had been duly admitted to pro-
bate. The probate of a will is a judicial act, the best evidence of which is the
order of the court confirming the act of the clerk, and it is only to be ascer-
tained by the records of that tribunal. But when recorded in the manner
required by law, with the proof of its execution indorsed upon it and certified
by the clerk, it may be inferred that the order of the County Court admit-
ting it to probate had been made, although no certificate of such fact was
attached to the copy produced in evidence.

2. *Wills — Devise of Lands — Mistake in Description — Extrinsic Evidence.* —
Where a devised tract of land was described in the will as "the west half
of the northeast quarter of section thirty-three, township sixty, of range six,
containing eighty acres, and situated in the county of Marion," but this
description showed that such a tract could not be located in that county,
extrinsic evidence might properly be introduced to show that the west half
of the northeast quarter of section *three*, in township *fifty-nine*, range six, was

2—VOL. XLIII.

owned and claimed by the testator; that it was in Marion county, and adjoined another tract devised to the same son, while the tract described in the will was really in the county of Lewis, and owned and occupied by a different person altogether; and further, that the tract was improperly described in the will by a mistake of the person who drew it up.

### Error to Sixth District Court.

The facts material to the case appear in the opinion of the court.

Plaintiffs, at the time, asked the following instructions :

1. There is no evidence in the case tending to show that at the time of the institution of this suit the land sought to be partitioned in this case was held by these defendants, or any one claiming under them, adversely to the plaintiffs.

2. The evidence in the case is insufficient to show that at the time of the institution of this suit the land sought to be partitioned was in the actual possession of the defendants, or any one claiming under them, holding adversely to the plaintiffs.

3. The possession requisite to bar the suit of one tenant in common against his co-tenant, for partition of the common property, must be an actual, visible possession by the co-tenant, or some one under him, claiming adversely to the plaintiffs.

4. Although it may appear from the evidence in the cause that Thomas J. Alverson, before his death, entered into the possession of the land in controversy, claiming the same as his own, and erected a cabin thereon, and cleared and fenced a garden spot around said house, and put one Creasy in possession of said land as his tenant, yet if it further appear from the evidence that prior to the institution of this suit the said tenant Creasy had quit and given up his possession and occupancy of said land, and the said cabin and fencing had been removed from said land by the defendants, or any of them, and that at the time of the institution of this suit there was no person in the actual, visible possession of said land against whom an action of ejectment might have been maintained, there was no such possession by the defendants as to bar the plaintiffs of their suit for partition.

5. The title to the land sought to be partitioned in this case is

not affected by the will of Pleasant Alverson, read in evidence, but as to said land the said Pleasant died intestate.

The court gave the third and fifth of said declarations, but refused the first, second, and fourth, and the plaintiffs excepted. There was a verdict for the defendants, whereupon the plaintiffs moved for a new trial on the usual grounds, and, being refused, they excepted, and took the case by writ of error to the Sixth District Court, where the judgment of the Circuit Court was affirmed; and the plaintiffs excepted, and have brought the case to this court by writ of error.

*Lipscomb*, and *Dryden & Lindley*, for plaintiffs in error.

I. An ejectment is maintainable only against one having the actual possession of the premises sought to be recovered. (Goodright v. Rich, 7 T. R. 327; McDowell *et al.* v. King, 4 Dana, 67; Lucas v. Johnson *et al.*, 8 Barb. 244.)

II. The law deems every person to be in the legal seizin and possession of land to which he has a perfect and complete title, and this seizin and possession continues until he is ousted thereof by an actual possession in another under a claim of right. (Ang. on Lim., chap. 31, § 5; 6 Peters, 743.) In this case, although it was shown that the defendants were in the exclusive possession at one time, yet if (as the evidence tended to show) before the suit was brought they had quit the possession, from that moment plaintiffs' former possession re-attached — the plaintiffs' title drawing to it the possession.

III. There is no competent evidence before the court that Pleasant Alverson, the ancestor of plaintiffs and defendants, left a will. The paper read as a will against the objection of the plaintiffs ought not to have been admitted, because it does not appear that it was ever adjudged to be a will. It is not accompanied by any certificate of probate. (R. C. 1855, p. 1569, § 16.) The evidence of the due execution of the paper may have been sufficient to justify the County Court in pronouncing judgment that it was the will of Alverson, but until that tribunal pronounced that judgment the paper cannot be used as a will. 2. Conceding that the paper read in the cause is the will of Alverson, still it is insuffi-

cient to vest the title to the land in dispute in the defendants. The most that can be said of the pretensions of the defendants is that the testator committed a mistake in the devise of his property. Neither this court nor any other has any power to reform a will or correct a mistake therein.

*Redd*, for defendants in error.

I. The object of the court should be to ascertain the intention of the testator (which intent, when ascertained, constitutes the very essence of the will), and its first and highest duty is to carry that intent, when ascertained, into effect. (1 Jarm. Wills, 346, n. 1; 2 Stark. Ev., part 2, 1275, n. *a*; 4 Kent, 537, 534; 3 Pet. 117; 1 Pierre Will, 332; 3 Bar. 1634; 4 Ves. Jr. 329.)

II. For the purpose of ascertaining the intent of the testator and giving effect to the devise, it is competent to look into the extraneous facts and circumstances surrounding the testator at the time of making the will (such as the number of his children, the quantity, condition, and location of his property, etc.) (4 Cruise, chap. 9, cl. 7 and 10, p. 158; 2 Stark. Ev. part 2, p. 1275.)

III. It is not essential that all the particulars used by the testator in describing the object or subject of the devise should be accurate to render the devise valid. (1 Jarm. Wills, 331.) When the words used by the testator in describing the property designed to be devised, in part correctly describe property which he owned at the time, and in part apply to property which the testator did not own or claim, the devise will be held to apply to and pass the property he did own; otherwise the devise would be void, the intention of the testator defeated, and he would be liable to have died intestate as to property which he clearly intended to devise.

The description in the devise, when applied to that in dispute, is correct in four separate particulars, viz: 1. In quantity (eighty acres). 2. In the quarter of the section (northeast quarter). 3. In the subdivision of the quarter (west half). 4. In the number of the range (six). It is incorrect in two particulars, viz: 1. In number of section (thirty-three instead of three). 2. In number of township (sixty instead of fifty-nine).

This similarity of description should be taken in connection with the facts and circumstances proved to have surrounded the testator at the time, viz: 1. He owned the land in section three, township fifty-nine, and never either owned or claimed the land in section thirty-three, township sixty, which was known by him to be the property of a neighbor. 2. The land in dispute lies adjoining the tract devised in the same clause to the same devisee, whereas the tract to which plaintiffs claim the devise applies lies at a distance of several miles in another county.

III. The testator, in his will, disposes of the number of tracts owned by him at the time.

IV. He evidently intended to devise to his son Thomas J. Alverson, a certain number of tracts, and of a certain size.

V. The scrivener, at the time he drew the will, had before him the patents of testator's lands, and wrote on each the name of the child to whom testator intended to devise the particular tract, and by testator's direction he wrote the name of Thomas J. Alverson on the patent for the tract in controversy.

The description in the devise, when taken in connection with the facts and circumstances proved in evidence, is sufficiently accurate (notwithstanding the error of the scrivener) to enable the court to say with certainty that the tract in dispute is the same tract intended to be devised by the testator to Thomas J. Alverson. If the devise is construed to pass the tract in dispute, the intention of the testator will be carried into full effect, viz: *a.* All his lands will pass by the will, and he will not have died intestate as to any portion of his real estate. *b.* His son Thomas J. will receive the quantity of land he clearly designed he should have. *c.* If the error in the description is held to defeat the devise, then the testator died intestate as to this tract, which he evidently did not intend; and his son Thomas J. will receive by the will eighty acres less than he clearly intended to devise to him — a construction which, instead of carrying into effect the intention of the testator, in accordance with the primary rules above cited, would defeat the intention.

VI. The evidence shows that Thomas J. Alverson, believing that he was the sole owner of the tract in dispute under the will,

took exclusive possession, claiming the ownership in severalty, and leased it out, and, when informed that plaintiffs claimed to own a common interest, denied it and asserted exclusive right in himself.   In this state of facts there was no joint or common seizin.   The plaintiffs had been disseized and cannot maintain partition, but must first establish their right.   The question of title cannot be tried in partition where there is no joint actual possession and plaintiffs and defendants claim title adversely. (Lambert v. Blumenthal, 26 Mo. 473 ; and cases there cited.)

FAGG, Judge, delivered the opinion of the Court.

This was a proceeding for partition, instituted in the Marion Circuit Court, and presents substantially the following statement of facts as gathered from the record.   John Creasy and Mary Jane, his wife, formerly Mary Jane Alverson, claimed in right of the wife to be entitled to the one undivided one-third part of a certain tract of land situate in said county, and described in the petition as the west half of the northeast quarter of section three, in township fifty-nine, range number six west.   It is alleged that Pleasant Alverson died intestate, sometime in the year 1859, seized and possessed of the premises in question, and leaving the following-named children his only heirs at law, viz : the said Mary Jane Creasy, Calvin and Thomas Alverson.   The answer of Calvin Alverson denies any claim of title or interest in the premises, and avers that the father, Pleasant Alverson, by his last will and testament, devised the same to his said son Thomas, and that the tract was erroneously described in the will as the west half of the northeast quarter of section thirty-three, township sixty, range six.   The other defendants, being the widow and heir at law of the said Thomas (who departed this life after the death of his father), deny the right of plaintiffs to any portion of the property, and set up a full and complete title, as aforesaid, under the last will of the said Pleasant Alverson.   It is also averred that, upon the death of his father, Thomas took possession of the property, claiming title thereto ; that he made valuable improvements, and continued to hold the same adversely

to plaintiffs up to the time of his death; and that since that event these defendants have continued in the exclusive and adverse occupation of the premises. The residence of Pleasant Alverson was in the adjoining county of Lewis, and a certified copy of his last will, as proved and recorded in said county, is attached to and made part of the answer of the last-named defendants.

Upon the trial in the Circuit Court this copy of the will was admitted in evidence, against the objections of the plaintiffs, and this presents the first question that will be considered in the examination of the case. It appears that the evidence of the subscribing witnesses was reduced to writing, certified by the clerk, as the law directs, and indorsed upon the will.

The sixteenth section of the act respecting wills (R. C. 1855) directs the clerk of the County Court to receive the proof of all wills exhibited for probate, "and grant a certificate of probate; or, if such will be rejected, grant a certificate of rejection." The law does not say to whom this certificate shall be granted, nor does it direct in what manner the evidence of this conditional act on the part of the clerk is to be preserved. That it is a mere conditional act on his part, and not conclusive either for or against the admission of the will to probate, is settled by the fourteenth section of the same act. So that if the proof taken by the clerk be deemed sufficient to admit the will to probate, and his certificate to that effect should be indorsed thereon, still, without an order made by the County Court, at its next term thereafter, confirming his act, this would constitute no sufficient evidence of the fact that it had been duly admitted to probate. The probate of a will is a judicial act, the best evidence of which is of course the order of the court confirming the act of the clerk, and is only to be ascertained by the records of that tribunal. (Jourdan v. Meier, 31 Mo. 40.)

The exemplification of the record in this case shows the entire instrument which purported to be the last will and testament of Pleasant Alverson, with the proof of the subscribing witnesses taken in the manner required by law, and that is all that would seem to be required by the twenty-eighth section of the same act to make it as effectual in evidence, in all cases, as the original

itself. By the twenty-sixth section of the act referred to it is required that "all wills shall be recorded by the clerk of the County Court, in a book kept for that purpose, within thirty days after probate; and the originals shall be carefully filed· in his office." Having been recorded in the manner required by law, with the proof of its execution indorsed upon it and certified by the clerk, the Circuit Court may very well have inferred that the act necessary to be performed by the County Court, previous to its being placed on record, had been performed, although no certificate of such fact was attached to the copy produced in evidence. The objection to the admission of the paper in this case was only as to its authentication. It is now too late to raise the further objection that it contained no copy of the order admitting it to probate, and we think no error was committed by the Circuit Court as to this point.

Five declarations of law were asked for by the plaintiffs: the first four relating to the question of possession on the part of Thomas Alverson, deceased, and those claiming under him, and the last one in relation to the question of title under the will of Pleasant Alverson, deceased. The third and fifth were given, and the remainder refused. It appears that Pleasant died in May, 1859, and Thomas in the year 1863; that the latter took possession of this tract of land, made some improvements upon it, but they were taken away about the time of his death. Some declarations of his were testified to by a portion of the witnesses, to the effect that he claimed the premises as his own, and denied that Mrs. Creasy was entitled to any part of them. There were some acts of ownership performed by the defendants after the death of Thomas, but no actual occupation of the land up to the time of bringing the suit. We think, upon this state of facts, that the possession of Thomas and those claiming under him was hardly sufficient to authorize the finding of an actual ouster as against Mrs. Creasy. The employment of counsel to assert his claim to the property, and other attending circumstances, go to show that the plaintiffs were all the while claiming to be entitled to a share in it, and we think there would have been no error in giving the first four instructions.

The fifth instruction raises, as we think, the real question for determination, viz: Did Pleasant Alverson die intestate as to the land in controversy? The clause of the will upon which the defendants' claim of title must rest is as follows: "I give and bequeath unto my son Thomas J. Alverson the real estate herein described, to have and to hold the same; the above real estate lying and being in the county of Lewis, and State of Missouri, and known as the part east half of the northeast quarter of section thirty-four, township sixty, of range six, containing sixty acres, more or less; the west half of the northeast quarter of section *thirty-three*, township *sixty*, containing eighty acres, more or less; forty acres, the southeast quarter of the northeast quarter of section *three*, township *fifty-nine*, in range six, and lying in Marion county, Missouri. Thomas J. Alverson and Calvin Alverson, in partnership, are to have the above real estate, lying and being in Lewis county, and known as the east half of the southeast quarter of section thirty-four, township sixty, range six, in equal parts." This clause of the will is so drawn as not to make it apparent at once what was intended by the testator. Taken as a whole, however, and giving what we think is a fair and reasonable interpretation of the language, it would seem to be that the sixty-acre tract devised to Thomas and Calvin in partnership was located in the county of Lewis, and the two remaining pieces in the county of Marion.

In the defendants' answer it is averred that the land in controversy was the eighty-acre tract which his father intended to be devised to his son Thomas, and that the same was improperly described in the will, by a mistake on the part of the person who drew it up; that it should have been described as being a part of section *three*, township *fifty-nine*, instead of section *thirty-three*, township *sixty*, as it is written in the will. Now, the simple proposition to be determined is whether, in such a state of case, extrinsic evidence can be admitted for the purpose of ascertaining precisely the location of the land intended to be devised to Thomas Alverson. In the work of Sir James Wigram, relating to the admission of extrinsic evidence in the interpretation of wills (as published in the New Library of Law and Equity), vol.

II, page 17, his fifth proposition is stated in these words: "For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will and to the property which-is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will. The same (it is conceived) is true of every other disputed point respecting which it can be shown that a knowledge of extrinsic facts can, in any way, be made ancillary to the right interpretation of a testator's words." Now here is a devise of a tract of land described as being situate in Marion county, but the numbers given for the purpose of fixing its location with reference to the surveys of the public lands show that such a tract cannot be located in that county. Extrinsic evidence is introduced to explain the fact that the west half of the northeast quarter of section three, in township fifty-nine, range six, was owned and claimed by the testator; that it is in Marion county; that it adjoins the forty acres devised to the same son; while the eighty-acre tract described in the will is really in the county of Lewis, owned and occupied by a different person altogether, and that the testator had never asserted any claim to it whatever.

That is not all. The person by whom the will was drawn up at the request of the testator testifies clearly to the fact that the description of the property intended to be devised to Thomas was incorrectly set out, through his own mistake. He says that a patent containing a description of the property in question was handed to him by the testator, with instructions to include that piece in the portion of his real estate given to his son Thomas, and that he wrote the latter's name upon the patent for the purpose of identifying the tract as intended for him, but by mistake he wrote down the wrong numbers of the section and township in drawing up the will. The description is otherwise correct.

It may frequently be a difficult matter to apply the rule under

consideration, and to fix its limits with entire certainty; but this case, we think, is so plain and simple in its facts as to admit of no doubt. The object of the testator, and that which must in all cases be effectuated by the courts in the interpretation of wills, is made entirely clear by the testimony. No room is left to doubt the fact that the intention was to pass the title of the property in controversy to Thomas Alverson, and therefore the claim of the defendants must be held sufficient to defeat the plaintiffs' suit. It will not be necessary to review the large number of cases that might be cited in support of the application of the rule to the case at bar. A decision of this court, as reported in Riggs v. Myers, 20 Mo. 239, is considered to be directly in point, and sufficient to settle the principles involved in this case. The conclusion is that the fifth instruction given by the Circuit Court was improperly given, and should have been refused. The ruling of the court, however, as to the admissibility of testimony, was correct, and the judgment for the right parties. The judgment of the Circuit Court was affirmed by the Sixth District Court, and the case is now brought here by writ of error.

Judge Baker concurring, the judgment is affirmed. Judge Wagner did not sit, having been of counsel in the lower court.