STATE OF MISSOURI at the relation of MIKE CALLAHAN, EDWARD CALLAHAN, AGNES HAUSNER and MARY O'BRIEN, Relators, Appellants, v. SAM HESS, Judge of the Probate Court of Phelps County.— 153 S. W. (2d) 713.

Division Two, July 25, 1941.

*H. BalkenBush* and *John P. Peters* for appellants.

390

*A. B. Holmes* and *E. W. Allison* for respondent.

 COOLEY, C.—In this case an opinion was written and handed down and on appellants' motion a rehearing was granted and the case was again argued and submitted. In appellants' motion for rehearing but one ground was urged, viz., that this court, in its first opinion, did not discuss or decide a contention advanced by appellants in their brief, viz., that the judgment of the probate court, whose record they sought to have quashed (as will be hereinafter referred to), was void because not entered within one year after the first publication of notice of letters testamentary. This contention was disregarded in the former opinion because we then said it had not been sufficiently presented by appellants' abstract of record and brief. In so disposing of the point we were in error. We inadvertently overlooked certain statements made in appellants' abstract and brief. Upon our attention being called to such oversight by appellants' motion for rehearing a rehearing was granted to the end that said contention might be considered. It will be considered in paragraph II of the present opinion. The statement of facts and paragraphs I and III of the former opinion we think sufficiently and correctly dispose of the points discussed and decided. They will appear (without quote marks) as the statement of facts and paragraphs I and III of this opinion.

This is a proceeding in certiorari, commenced in the Circuit Court of Phelps County, whereby relators seek to quash the record of the probate court of that county, made and entered February 26, 1934, which confirmed, in term time, an order made by the judge thereof in vacation, admitting to probate the last will and testament of William Callahan, deceased. On the return day of the writ, the respondent judge filed a motion to quash, which the court sustained, and relators appealed.

"A motion to dismiss or quash the writ, being in the nature of a demurrer, may be filed and granted before the return has been made to the writ. A motion to dismiss or quash the writ for want of jurisdiction or right to relief prayed by the petition is in effect a demurrer, confessing all facts well pleaded, but searching the whole record and attacking the first fatal defect." [4 Houts Mo. Pl. & Pr., sec. 1400, p. 687, and cases cited.] The question for determination is, therefore, purely one of law.

Insofar as may be necessary for an understanding of the issues, the facts as pleaded by the relators are as follows: That they are

nieces and nephews of William Callahan, late of Phelps County, who died on November 6, 1932; that on November 15, 1932, there was presented to the then Judge of Probate, in vacation, a paper-writing purporting to be the last will and testament of said Callahan, which, upon examination, and the testimony of the subscribing witnesses thereto in relation to the execution of the same, was adjudged and declared by said judge, in vacation, to be the last will and testament of said testator, and the same was ordered admitted to probate; that thereafter, on June 4, 1933, relators instituted a suit or proceeding to contest said will; that upon a trial of said will contest in the circuit court there was a judgment upon a directed verdict, in favor of the proponents of the will; that upon appeal to the Supreme Court, and in an opinion filed November 12, 1936, said judgment was reversed and the cause remanded with directions to dismiss the same for want of jurisdiction of the subject matter because there was no *judgment* in the probate *court* admitting the will to probate.

The petition further alleges that "while the will contest aforesaid was pending on appeal in the Supreme Court of Missouri and yet undetermined, parties to petitioners and relators unknown . . . did, on the 26th day of February, 1934, go into the Probate Court of Phelps County and without notice to these petitioners or their attorneys, and without warrant or authority in law . . . did then and there procure an entry of the records of said Probate Court . . . in the form of a judgment . . . the following to-wit:

" 'Estate of William Callahan Dec'd. Probate of Will Confirmed. Now on this day it is ordered by the Court, that the Probate of the Will of William Callahan, heretofore made by the Judge in vacation, be in all things approved and confirmed.' "

It is further alleged that the relators "had no reason to suspect nor anticipate, that any such action would be taken on the part of or by said Probate Court of Phelps County, Missouri, at the time it was taken, nor at any other time while said cause was pending and undetermined in the Supreme Court."

I. The first proposition urged is that the confirmation order, which constitutes the probate court's judgment admitting the will to probate, is void because that court was without jurisdiction to enter such judgment during the pendency of the appeal of the will contest. But the difficulty with that position is that jurisdiction of the circuit court to entertain a will contest is derivative; that is, in the nature of an appeal from the probate court. ▆▆▆ [Hyde v. Parks, 221 Mo. App. 675, 283 S. W. 727; Johnson v. Brewn, 277 Mo. 392, 210 S. W. 55; State ex rel. Hamilton v. Guinotte, 156 Mo. 513, 57 S. W. 281, 50 L. R. A. 787.] And relators, on their appeal in the will contest, contended that the circuit court was without jurisdiction

of the subject matter because of the lack of the very thing of which they now complain, i. e., an order in term time confirming the vacation order of the judge. Their contention was sustained, the court pointing out that the filing of a suit to contest a will has the effect of vacating the judgment of the probate court admitting the will to probate, leaving it unproven unless and until established by the judgment of the circuit court. "But" said the court, "in the present case there was no *judgment* in the probate court 'admitting the will to probate,' hence the filing of this cause did not *vacate* any *judgment* of the probate court." And so it was held that the circuit court did not acquire jurisdiction of the subject matter of the suit, and accordingly reversed the judgment sustaining the will, and reversed the cause with directions to dismiss the same for want of jurisdiction. [Callahan et al. v. Huhlman et al., 339 Mo. 634, 98 S. W. (2d) 704.]

The rule invoked by relators is that an appeal divests the jurisdiction of the trial court and places it in the appellate court, and during the pendency thereof the court from which the appeal has been allowed has no power to render further decisions affecting the rights of the parties until the case has been remanded. Such is undoubtedly the general rule. [State ex rel. v. Sale, 153 Mo. App. 273, 133 S. W. 119; 2 Ency. of Pl. & Pr. 327; Foster's Admr. v. Rucker's Exr., 26 Mo. 494; Ryans v. Boogher, 169 Mo. 673, 69 S. W. 1048.] Its mere statement demonstrates that it presupposes jurisdiction over the subject matter of the suit or proceeding. Proceedings of a court without jurisdiction of the subject matter are absolutely void. [7 R. C. L., sec. 75, p. 1042; United Cemeteries Co. v. Strother, 342 Mo. 1155, 119 S. W. (2d) 762, and cases cited.] Bearing in mind the distinction to be drawn between those instances where, as here, the proceedings were absolutely void and, therefore, a nullity, and those cases where the appeal is merely premature, or was not perfected within the proper time, and therefore subject to dismissal, or was unauthorized, we have no hesitancy in holding the pendency of the appeal in question, did not and could not operate to impair, suspend nor affect the power of the probate court to exercise its jurisdiction to admit the will to probate. What has been said in this connection necessarily disposes of the contention that the action of the Phelps County Probate Court in entering the judgment aforesaid constituted a constructive contempt of this court.

II. It is contended that said judgment is void because not rendered within one year from the date of the first publication of notice of grant of letters testamentary, as provided by Section 531, R. S. 1929, Mo. Stat. Ann., p. 324, Section 532, R. S. 1939. Said Section 531 reads:

"When any will is exhibited to be proven, the court, or judge, or clerk thereof in vacation, may immediately receive the proof and grant a certificate of probate, or, if such will be rejected, grant a certificate

of rejection: *Provided, however,* no proof shall be taken of any will nor any certificate of probate thereof issued, unless such will shall have been presented to a probate court, or judge or clerk thereof in vacation, within one year from the date of the first publication of the notice of granting letters testamentary or of administration that may have been granted by any probate court in the state of Missouri, on the estate of the testator or named in such will so presented.''

It will be noted that said Section 531 provides that no *proof shall be taken* of any will nor certificate of probate thereof issued unless the will be presented to the probate court, *or judge, or clerk thereof in vacation,* within one year from the date of first publication of notice of the granting of letters testamentary or of administration, etc. Note, the statute does not say within one year from the time when the probate *court* (as distinguished from the judge or clerk in vacation.) may, by judicial action, confirm the action of the judge (and *ex officio* clerk) or clerk in vacation, thus making the probate of the will a judicial act—a judgment—of the *court.* [See Callahan et al. v. Huhlman et al., 339 Mo. 634, 98 S. W. (2d) 704.] The statute only says that no proof shall be taken nor certificate of probate issued unless the purported will shall have been presented to the probate court, *or judge, or clerk thereof in vacation* within one year, etc. In the case at bar that was done. The will in question was so presented to, and proof of its due execution was taken by, the judge in vacation within the time prescribed ██ by the statute, as shown by the record before us. There remained only the duty of the *court,* in term time, to judicially confirm or to reject the action of the judge (or clerk) in vacation. As to that judicial action of the *court* the statute does not fix a time limit—a jurisdictional limit. As to that, good reason may be seen why the Legislature did not so provide—did not provide that the *confirmation* of the action of the judge or clerk of probate in vacation should be made within one year after presentation of the will and the taking of proof of its execution. It is sufficient for us as a court to say that the Legislature did not so provide.

Section 528, R. S. 1929, Mo. Stat. Ann., p. 322, provides that the probate court, ''or the judge or clerk thereof in vacation, subject to the confirmation or rejection by the court, shall take proof of last wills, and of the date of the death of the testator.'' That was done in this case. The proof was duly made to the judge of the probate court in vacation and a record entry thereof made at the time the will was presented, all before letters testamentary were issued. But said Section 528 does not say that the confirmation or rejection by the court must be made at the next succeeding—or at any specified —term of the court.

Appellants cite, on the point that the confirmation or rejection by the probate (then county) court must be made at the next suc-

ceeding term after proof of execution, etc., has been made, Creasy v. Alverson, 43 Mo. 13, 19. In that case the court did say, 43 Mo. l. c. 19, "So that if the proof taken by the clerk be deemed sufficient to admit the will to probate, . . . still, without an order made by the County Court, *at its next term thereafter,* confirming his act, this would constitute no sufficient evidence of the fact that it had been duly admitted to probate. The probate of a will is a judicial act, the best evidence of which is of course the order of the court confirming the act of the clerk, and is only to be ascertained by the records of that tribunal." (Italics ours.) In that case the observation that the order of confirmation should be made at "the next succeeding term" was made *arguendo.* It was not necessary to decision of the question there in controversy and was not discussed further than the mere reference we have made in the above quotation. It had not been stressed or discussed by counsel in their briefs. The real point in controversy was whether the action of the clerk in vacation or of the *court* in term time was the action—*the judgment*—of the court, and it was held that the action of the *court* was the judicial act. On that point Creasy v. Alverson, supra, holding that the confirmation by the *court* in term time of the action of the clerk (or judge) in vacation in taking proof of a will and ordering letters testamentary issued, is the judicial act, has been cited and followed many times. But we have searched in vain for a case holding, expressly or by implication, that such order or *judgment,* of the *court,* must be made at the next succeeding term after the clerk (or judge) in vacation has had a will presented to him and has duly heard the proof of its execution and made due entry of record to that effect (as in the instant case). We do not regard Creasy v. Alverson as authority for appellants' contention on that point.

In Farris v. Burchard, 242 Mo. 1, 8, 145 S. W. 825, it was intimated that the judicial action of the court, confirming the action of the clerk in vacation, might be had at a term later than the next succeeding term. In that connection see also Farris v. Burchard, 262 Mo. 334, 171 S. W. 361. And in Callahan et al. v. Huhlman et al., supra, it is distinctly stated (98 S. W. (2d) l. c. 706, [6-10])—"the omission to confirm in term time may be corrected at any subsequent term, provided there be sufficient record, files, etc., to justify correction." We think that statement clearly correct. The probate *court* had jurisdiction to act, and in the case before us there clearly existed sufficient record and files to warrant the judicial action of the court, confirming in term time the action of the judge in vacation, though at a term later than the term next succeeding the action of the judge in vacation. The *court* had not lost or exhausted its jurisdiction. This point is ruled against appellants.

III. Relators undertake to raise the constitutional question that the judgment deprives them of their property without due process

of law, without their day in court, as guaranteed by Sections 10 and 30 of Art. 2, Const. of Mo. and the 14th Amendment to the Constitution of the United States. However, it is not developed in the brief further than its mere statement under "Points and Authorities." The point hinges on whether relators were entitled to notice of the confirmation ▓▓▓▓ order. We do not regard the question as being open. In 68 C. J., sec. 596, p. 873, it is stated:

"A proceeding to probate a will, being governed in most, if not all, jurisdictions entirely by statute, is generally regarded as a special proceeding, and it is not an 'action' in the sense in which that word is generally used, and is not a proceeding either at common law or in equity, although it is equitable in its nature. It is a civil proceeding as distinguished from a criminal proceeding. It is a proceeding *in rem*, and is *ex parte*, and not an adversary suit or proceeding *inter partes*, . . ."

The nature of the jurisdiction of probate courts in the matter of proving wills was discussed in the early case of Benoist et al. v. Murrin et al., 48 Mo. 48, a will contest under the statute. It was there said:

"But this is not an ordinary suit, nor had the Circuit Court original jurisdiction of its subject-matter. The original jurisdiction was with the Probate Court, where the will was originally probated and ordered to record. The proceedings were *in rem*, operating directly upon the will—*the res*; . . .

"In Missouri and in a number of other States there are two modes of proving a will, one provisional and the other final. The first is denominated the common form, the second the solemn form. A will is proved in the common form when it is presented, proved and ordered to record, as provided in the thirteenth section of our statute of wills. That is or may be done in the absence of the parties in interest, and without citing them to appear. The validity of the will may nevertheless be contested, and the proof of it in solemn form required. 'When a will is proved in solemn form,' says NISBET, J., in Brown v. Anderson, 13 Ga. 176, 'it is necessary that all parties interested be cited to witness the proceedings, that the will be produced in open court, that the witnesses be there examined, and that all parties in interest have the privilege of cross-examination;' and that, in substance, is what is contemplated by the twenty-ninth section of our statute of wills. The proof in solemn form in this State is required only when a contest arises, and then the case is transferred to the Circuit Court in the mode provided by law (Sec. 29), as was done in the case at bar."

And in Hughes v. Burriss, 85 Mo. 660, in construing the statutes relating to wills and their probate and, particularly, Sections 3972 and 3980, R. S. 1879 (which, with subsequent amendments are, respectively, Sections 528 and 537, R. S. 1929) it was said:

"It will be perceived that under these sections any person may present, either to the probate court, or its clerk in vacation, a will for probate, without being required to give any notice whatsoever to any person interested in the probate or rejection thereof. No right is given by the statute to any such party to appear and contest the proceedings, either before the court or clerk, but the whole proceeding is *ex parte* and without notice." [Italics ours.]

No reason is suggested, nor does any occur to us, why the premature filing of the suit to contest the will operated to change the rule above announced so as to require notice to relators, as prospective contestants, of the action of the probate court in confirming the vacation order of the judge. They were aware of the omission and relied on it on the previous appeal. Inasmuch as notice to them was not required, and because the court had jurisdiction to make the order for the reasons hereinbefore pointed out, it follows that the judgment of the circuit court quashing the writ of certiorari should be, and it is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Tipton* and *Leedy, JJ.*, concur; *Ellison, J.*, dissents in separate opinion.

ELLISON, J. (dissenting).—The case presents these facts. On November 15, 1932, the Probate Court of Phelps County made a *vacation* order admitting the will of William Callahan, deceased, to probate. For some reason the present appellants brought a suit in the circuit court to contest the will. The case was tried on its merits and the circuit court directed a verdict sustaining the will. During the trial, so far as appeared from the record in that case, it did not occur to anyone that the vacation order probating the will had not been confirmed in *term time* under Section 529, R. S. 1939, Sec. 528, Mo. Stat. Ann., p. 322.

However, the contestants appealed to this court and in their brief here did raise the point, claiming the circuit court lacked jurisdiction of the will contest for want of such probate confirmation in term time. On November 12, 1936, Division One of this court in Callahan v. Huhlman, 339 Mo. 634, 98 S. W. (2d) 704, upheld the contention of the appealing contestants, ruling the jurisdiction of the circuit court in the will contest was purely derivative, and since the probate court had failed to confirm in term time the vacation order theretofore made admitting the will to probate, the circuit court had no jurisdiction of the contest. The judgment was reversed and the cause remanded with directions to dismiss the contest for want of jurisdiction.

But in the meantime, on February 26, 1934, during the pendency of the appeal in the will contest, the Probate Court of Phelps County, without notice to the contestants or their attorneys, had entered an order in term time confirming the aforesaid vacation order made over 15 months earlier. So, when the mandate of this court went down in November, 1936, it provoked an investigation wherefrom contestants learned that over two years and eight months before, in February, 1934, while the appeal was pending, the probate court had made the confirmation order in term time, as aforesaid, unbeknownst to them.

Confronted with this fact, appellants found themselves unhorsed and unable to bring a new will contest because Sec. 538, R. S. 1939, Sec. 537, Mo. Stat. Ann., p. 326, requires such contests to be brought within *one year* after the probate of the will. And Sec. 540, R. S. 1939, Sec. 539, Mo. Stat. Ann., p. 333, provides that if no contest be brought within that time the probate of the will shall be binding. Thereupon contestants brought the present action in certiorari in the circuit court, whereby they sought to quash the record of the probate court made in February, 1934, confirming the vacation order. Judgment went against them and they prosecuted this appeal.

Their contention was and is that the probate court had no power to enter the term time confirmation order in February, 1934, because it was made after the probate court had lost jurisdiction of the cause, and while the will contest was pending on appeal in this court. The principal opinion answers that contention by saying the decision of this court in Callahan v. Huhlman, supra, made the whole will contest proceeding a nullity, in consequence of which the probate court was not bound by the pending appeal in that case, did have jurisdiction of the probate proceedings, and could enter the term time order, as it did, in February, 1934.

I respectfully dissent from that holding. The institution of the will contest in the circuit court operated in the nature of an appeal from the proceedings in the probate court and had the effect of vacating them. [Fletcher v. Henderson, 333 Mo. 349, 355(1), 62 S. W. (2d) 849, 851(1); Johnson v. Brewn, 277 Mo. 392, 210 S. W. 55.] When the appeal was prosecuted by the contestants to this court from the judgment of the circuit court it carried with it its own *supersedeas,* State ex rel. Hamilton v. Guinotte, 156 Mo. 513, 57 S. W. 281, 50 L. R. A. 787. This being true, the probate court lost jurisdiction and had no power to act after the contest proceeding was instituted in the circuit court and during its pendency on appeal here—unless, as the principal opinion holds, the contest proceedings were utterly void throughout. They were, of course, after this court said so in Callahan v. Huhlman, supra, and it is equally true that that decision when rendered operated retrospectively back to the institution of the contest, so far as the judgment was concerned. But I submit this does not mean the probate court could flaunt the authority of the

higher courts while the jurisdictional question was being held for and under adjudication by those courts.

Jurisdiction of a court (in this case the circuit court in the will contest) has three elements. As stated in United Cemeteries Co. v. Strother, 342 Mo. 1155, 1162, 119 S. W. (2d) 762, 765, the requirements are: (1) jurisdiction of the subject matter; (2) jurisdiction of the person or thing; (3) and the point decided must be, in substance and effect, within the issue. This last essential is what is sometimes called "power to render the particular judgment in the particular case." [State ex rel. Woodmansee v. Ridge, 343 Mo. 702, 708, 123 S. W. (2d) 20, 23.] The circuit court admittedly had general jurisdiction of the will contests and the parties were in court. The jurisdictional question confronting it arose under the third of the above heads or subdivisions.

But it is fundamental that the circuit court had power to hear and determine the question of its own jurisdiction. 15 C. J., sec. 170, p. 851, or, as otherwise put, like every other court of general jurisdiction it had power to determine whether the conditions essential to the exercise of that jurisdiction existed. [14 Am. Juris., sec. 168, p. 368.] And the institution of the will contest in the circuit court and the *supersedeas* attending the appeal therefrom had the effect of protecting the *status quo ante* and prevented the probate court from striking out or vacating the judgment, order or decree appealed from, and from amending or modifying the same. [3 C. J., sec. 1448, p. 1322; 4 C. J. S., sec. 674, p. 1157; 3 Am. Jur., sec. 529, p. 193, sec. 543, p. 199.] At least this is true unless the whole proceeding was a complete nullity. If the latter proposition be affirmed it means the opinion of this court in Callahan v. Huhlman, supra, and the reasoning thereof, also were void, for our jurisdiction in that case was derivative. And it further means the probate court had the right to interfere with and frustrate the exercise by this court of its admitted power to determine its own jurisdiction.

Surely this cannot be the law. Looking at the case from a practical standpoint, these facts cannot be ignored. The parties joined issue on the merits in the will contest. On contestants' appeal from the judgment of the circuit court establishing the will they raised the point that that court had no jurisdiction of the contest because the vacation order of the probate court admitting the will to probate had not been confirmed in term time. Indeed the summary of contestants' brief as printed in our official report shows that was the only point raised. On the other hand, the proponents contended the circuit court judgment establishing the will was final, because the institution of the will contest had the effect of *vacating* the probate record, and the *only* question for decision in the contest was whether the instrument was or was not the will of Callahan. They further argued contestants were estopped to challenge the initial probate of

the will since they had instituted the contest below and introduced the will in evidence.

All these and other questions were mooted on the appeal on the theory and assumption that there had been no probate confirmation of the will in term time. Division One evidently thought so because this sentence appears in its opinion (339 Mo. l. c. 638, 98 S. W. (2d) l. c. 706): "In the situation here the will in question, with no confirmation in term time (and assuming there will be none) of the proceedings had in vacation of the probate court, would not have the status and standing of a *probated will* until after the lapse of ten years from the date of such vacation proceedings." Yet at the very time that sentence was written, a confirmation order had been entered on the probate record in term time while the appeal was pending, and had been standing for over two years and eight months apparently without the knowledge of the parties on either side of the case.

In that situation the hands of the contestants were tied. They were held in court by proponents' opposition on the issue as it had been drawn. Both sides were proceeding on the theory that no confirmation order had been made. No one would say that either could have gone back to the probate court and obtained such an order while the contest was being thus waged. And if that is true the probate court could not enter the order on its own motion. It would be contrary to public policy for such an order to have validity, even though the superimposed contest and appeal were ultimately found to be void as to *results* for want of a jurisdictional basis. Without doubt the contest proceeding was legal and pending insofar as it afforded the circuit and Supreme Courts an opportunity to determine the jurisdictional question. And an interference with the exercise of that power was a contempt of the authority of those courts. [3 C. J., sec. 1458, p. 1327; 4 C. J. S., sec. 676, p. 1159.]

As stated in 13 C. J., sec. 19, p. 16: "Where steps taken to review an order, judgment, or decree by appeal . . . amount to *supersedeas* . . . any attempt to carry out the order during the pendency of the proceedings for review will be adjudged contempt." A few paragraphs earlier the same Title says, 13 C. J., sec. 14, p. 13: "Disobedience of a void mandate, order, judgment, or decree, or one issued by a court without jurisdiction of the subject-matter and parties litigant, is not contempt. But the fact that the order is in part void does not justify violation of the valid parts thereof. The lack of jurisdiction must be such as is manifest in the inception of the proceeding, and not that which develops through the hearing and determination of the cause; hence it is no bar to the conclusiveness and sentence for contempt that the court was investigating a matter over which it was finally ascertained to have no jurisdiction."

This text law is supported by the cases. Thus, in United States

v. Shipp, 203 U. S. 563, 573, 51 L. Ed. 319, 27 Sup. Ct. 165, 8 Ann. Cas. 265, the defendant sheriff was charged with contempt of the United States Supreme Court for conspiring to permit the lynching of a negro in his custody, Johnson, who had theretofore been convicted of murder in a state court. Johnson's petition for *habeas corpus* had been denied by a United States Circuit Court of Appeals and the Supreme Court had allowed an appeal and stayed proceedings. The lynching took place at that juncture. .

The Supreme Court said: "Even if the Circuit Court had no jurisdiction to entertain Johnson's petition, and if this court had no jurisdiction of the appeal, this court, and this court alone, could decide that such was the law. It and it alone necessarily had jurisdiction to decide whether the case was properly before it. On that question, at least, it was its duty to permit argument and to take the time required for such consideration as it might need. . . . Until its judgment declining jurisdiction should be announced, it had authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition, just as the state court was bound to refrain from further proceedings until the same time. . . . The fact that the petitioner was entitled to argue his case shows what needs no proof, that the law contemplates the possibility of a decision either way, and therefore must provide for it."

In Passmore Williamson's Case, 26 Pa. St. 9, 21, the petitioner applied for a writ of *habeas corpus* to discharge him from custody under a commitment issued by a United States District Court for contempt in refusing to obey its process in another case pending before it. The petitioner's contention was that the latter court had no jurisdiction of the case out of which the commitment for contempt had been issued. The Supreme Court of Pennsylvania said: "There are some proceedings in which the want of jurisdiction would be seen at the first blush; but there are others in which the court must inquire into all the facts before it can possibly know whether it has jurisdiction or not. Any one who obstructs or baffles a judicial investigation for that purpose is unquestionably guilty of a crime for which he may and ought to be tried, convicted and punished."

Ex parte Wimberly, 57 Miss. 437, 445, thus declared the law: "When we say that a person may safely disobey the commands of a court which is without jurisdiction to issue them, we mean either that it has failed to give, or is incapable for some reason of giving, legal notice to the person whose rights are to be affected, or that the subject-matter of the controversy is one which that court has no right to consider in any aspect whatever."

The rule to be deduced from these authorities is that, unless the court possessing the cause obviously has no jurisdiction of the general subject matter or the person, or, to state the proposition conversely,

if the jurisdictional question pending before the court is more than colorable, then the court has a qualified jurisdiction to determine its own jurisdiction. This is true of necessity, and it makes no difference whether the question be one of fact or of law (as where the question turns on the construction of an ambiguous statute, conflict of statutes, ambiguous decisions, conflict of decisions, estoppel, waiver, etc.) if the question be substantial. And even then the substantiality of the question may be a matter for judicial inquiry. Some *court* must decide such questions, and if they exist in a case otherwise properly brought we can see no reason why the court cannot decide them. Insofar as that power exists the case is legally pending for the purpose; and interference with it is an unwarranted and illegal encroachment on the power.

This being true, I think we should hold void the act of the probate court in entering the term time order confirming the probate of the Callahan will while the absence of such an order and the necessity for it were the very issues in the then pending appeal in the contest case. Under the decisions cited above such action was contemptuous even though this court later ruled it had no jurisdiction of the contest. But considering the reason behind the law, it was more than that. The reason is that such action interferes with the processes of the appellate courts, and if it did that it should be held void as a matter of public policy.