Paul and Vincent LOPICCOLO,
Appellants,

v.

Shirley E. SEMAR, Deborah Juenger,
John and Vickie Newman, Co–
Appellant/Respondents.

Nos. 64753, 64759.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 17, 1995.

Gerald K. Rabushka, Cynthia A. Frank, Charles J. McEnery, Jr., Clayton, for appellants.

Kim B. Blankenship, St. Louis, for respondent Semar.

Francis E. Pennington, III, Joe D. Jacobson, Christina A. Levison, St. Louis, for respondent Juenger.

Thomas A. Connelly, St. Louis, for respondents Newmans.

Robert Juenger, pro se.

DOWD, Judge.

Two separate groups of appellants appeal a judgment in which the jury determined the earlier of two competing wills to be the valid last will and testament of the deceased. We affirm.

The facts viewed in the light most favorable to the verdict indicate that Ernest Wilde (hereinafter Testator) died April 12, 1991, leaving no blood relatives. His only heirs at law were Paul LoPiccolo and Vincent LoPiccolo (LoPiccolos), the children of his deceased wife born of an earlier marriage.

At the time of his death, Testator was in his late 70s and in poor physical health. He had previously suffered a stroke and was paralyzed on the right side of his body. Testator could not see well and experienced memory problems. The housekeeper, Defendant Shirley Semar, lived at Testator's home since 1985. Defendant Semar moved in with Testator after her daughter, Defendant Vickie Newman, and Newman's and Testator's friend, Defendant/Third–Party Plaintiff Deborah Juenger, suggested to Testator that Defendant Semar temporarily move in "as a convenience to her (Semar)." During part of this time, Testator's wife was living; however, she died in 1990.

On August 17, 1989, Testator executed a new will which replaced a prior will executed in 1987. The terms of the 1989 will gave Defendant Semar a substantial portion of Testator's estate should Testator's wife predecease him. The terms of the 1987 will gave a substantial portion to Vickie Newman, her husband John, and Deborah Juenger. At the time of the 1989 will, Defendant Semar controlled virtually all of Testator's financial affairs. She paid the bills, wrote the checks, and made the bank deposits. Her name was on Testator's checking account as well as the safe deposit box. Furthermore, in 1989 Testator executed a power of attorney in Defendant Semar's favor.

Hyatt Legal Services prepared the 1989 will. Hyatt's file was opened in Defendant Semar's name, and she signed Hyatt's fee statement as the "client." A provision within this will attempted to establish a trust whereby Defendant Semar could reside in Testator's home for as long as she wished after his death. The last provision in the 1989 will stated if Testator later revoked the will or eliminated Defendant Semar as contingent beneficiary, his estate would retroactively pay her $500 per month from November 1, 1985, to the date of revocation.[1]

On August 14, 1991, Testator's 1989 will was admitted to probate. The first publication of letters testamentary occurred on August 17, 1991. Paul and Vincent LoPiccolo (Testator's step-sons) filed a Contest of Will Petition November 6, 1991, in which they named as defendants beneficiaries of the 1989 will, specifically Shirley Semar, Deborah Juenger, Vickie Newman and John Newman. In this Petition, the LoPiccolos allege the 1989 will was not the last will and testament of Testator, improper execution, undue influence, and mental incapacity of Testator.

Defendant Juenger presented the 1987 will to probate court on February 14, 1992. On February 18, 1992, she filed a Third–Party Petition in which she claimed the earlier 1987 will was Testator's valid last will and testament. Defendant Juenger stated this will was never revoked; however, it was lost and only an unsigned copy remained.[2] Defendant Juenger's Third–Party Petition stated should the 1989 will be adjudicated as invalid, the 1987 will should be re-established, if rejected by the probate court, and admitted to probate. This information was also included in her January 22, 1992 Answer to the LoPiccolos' Petition and February 14, 1992 Cross–Claim against Defendant Semar. When Defendant Juenger filed her Third–Party Petition, the probate court had not yet ruled regarding the 1987 will which had been presented to it February 14, 1992. The probate court rejected the 1987 will on February 25, 1992.

By leave of court, on February 26, 1992, Defendants John and Vickie Newman filed their Answer to the LoPiccolos' Petition and their Cross–Petition. In the Cross–Petition, they alleged the 1987 will was the valid last will and testament of Testator.

On May 20, 1993, the LoPiccolos filed a two-page Motion to Strike Defendant Juenger's Third–Party Petition due to lack of jurisdiction because it had been filed before the probate court rejected the 1987 will. On August 2, 1993, the day before the trial began and the day on which the jury was selected, the LoPiccolos filed a Memorandum in Support of their Motion to Strike Defendant Juenger's Third–Party Petition. Defendant Semar joined in the motion, which was denied by the trial court.

1. Originally, the will was typed as stating Defendant Semar would be paid the $500 per month starting November 1, 1989. However, the year 1989 had been crossed out and handwritten above was the year 1985.

2. Defendant Semar admitted during cross-examination the Testator was very organized and methodical about his business papers. However, his signed copies of a 1987 will were lost. Testator used a metal box in the house to store important papers. Defendant Semar knew about the box and its contents, and she had access to the box. After Testator "lost" the 1987 will, his wife supposedly asked Defendant Semar to retrieve a signed copy of the 1987 will from her daughter, Defendant Vickie Newman. Defendant Semar testified she did get the will and allegedly gave it to Testator's wife who, in turn, supposedly gave it to a Hyatt attorney. However, Defendant Semar presented no evidence other than her own testimony to support this contention at trial. Apparently no 1987 will was found in Testator's file at Hyatt and no one at Hyatt remembered receiving the 1987 will.

Defendant Semar filed a Motion in Limine August 2, 1993, in which she sought to exclude from evidence: (1) the complete Hyatt Legal Services file; (2) the testimony of certain Hyatt employees, including Steven Bain; and (3) Testator's medical records, unless his physicians testified. The trial court granted the motion as to part three, and the medical records were excluded. The trial court postponed ruling on parts one and two, and it appears the court never did rule on those parts.

A jury was selected August 2, 1993, and the trial began the next day, August 3, 1993. On August 6, 1993, the jury returned a verdict in which it declared the 1987 will to be Testator's valid last will and testament. From this verdict, Defendant Semar and the LoPiccolos separately appeal.

We will discuss the two groups of Appellants separately, beginning with the LoPiccolos (Plaintiffs at trial). While the jury invalidated the 1989 will which they sued to invalidate, the LoPiccolos appeal the judgment upholding the 1987 will which they also contested at trial. Apparently, they desire no will be valid so they will become the sole heirs at law.

For their first point on appeal, the LoPiccolos argue the trial court erred in denying their Motion to Strike Defendant Juenger's Third–Party Petition and in allowing Defendants John and Vickie Newman to file their Cross–Petition because: (A) the trial court did not possess jurisdiction to rule on either petition since the probate court had not yet made any determination regarding the 1987 will; (B) neither group had standing to file a will contest petition; and (C) the Newmans did not file their petition within six months after the date of probate or the first publication of the notice granting letters testamentary to Semar.

The LoPiccolos argue under Part A the trial court acted without jurisdiction when it proceeded on Defendant Juenger's Third–Party Petition and Defendants John and Vickie Newman's Cross–Petition because the probate court had not yet accepted or rejected the 1987 will. The LoPiccolos' assertion that the probate court had not rejected the 1987 will at the time the Newmans filed their Cross–Petition is not accurate. We will address the trial court's jurisdiction to address the Newmans' Cross–Petition under Point I, Part C. The remaining argument within Point I, Part A, alleges the trial court lacked jurisdiction to hear Defendant Juenger's Third–Party Petition because it was filed before the probate court rejected the 1987 will. We disagree.

■ First we note Defendant Juenger asserted the validity of the 1987 will both in her initial Answer filed January 22, 1992, and in her Third–Party Petition filed February 18, 1992. The 1987 will was timely presented to probate on February 14, 1992, which is within six months of the first publication of letters testamentary (August 17, 1991). § 473.050, RSMo.1986. The probate court rejected the 1987 will on February 25, 1992.

Section 473.050 states:

No proof shall be taken of any will ... unless the will has been *presented* to the judge or clerk of the probate division of the circuit court, within six months from the date of the first publication of the notice of granting letters testamentary or of administration by the probate division of any circuit court in the state of Missouri, or within thirty days from the commencement of an action under § 473.083 to establish or contest the validity of a will, whichever is later, on the estate of the testator named in the will so presented. (Our emphasis), § 473.050, RSMo.1986.

■ One of the definitions of the word "present" is "to lay (as a charge) before a court as an object of inquiry." *State ex rel. Shriners' Hospitals for Crippled Children v. Hensley,* 385 S.W.2d 820, 826 (Mo.App.1964). To present a will, one must file it with an accompanying application or petition asking the probate court to probate or to reject the will. *Matter of Estate of Bridges,* 710 S.W.2d 327, 330 (Mo.App.1986); *Gillman v. Mercantile Trust Co.,* 629 S.W.2d 441, 445 (Mo.App.1981); *Hensley,* 385 S.W.2d at 829. "Presentment was complete when the will was filed together with the petition for probate of will and for letters testamentary." *Bridges,* 710 S.W.2d at 331. Of course, this must be done within the time constraints of

§ 473.050, RSMo.1986, as noted above. Therefore, Defendant Juenger timely presented the 1987 will to probate. That the probate court did not rule on the will until after the statutory deadline for presentment is not relevant to the issue of timely presentment. *See, State ex rel. Callahan v. Hess,* 348 Mo. 388, 153 S.W.2d 713, 715–16 (1941).

The *Gillman* case stated in dicta, without supporting citation, that the "action" of the probate court is a condition precedent to bringing a suit to set aside or establish a will. *Gillman,* 629 S.W.2d at 446. The facts of *Gillman* are different from the case at hand. There, the proponent of the will in question never presented the will to the probate court; therefore, that person had no standing to challenge the other will. *Id.* Furthermore, this statement from *Gillman* is seemingly in contradiction to the court's statement on the previous page (defining presentment as the filing of a will with an application that the probate court accept or reject it) and other courts' statements concerning presentment. *Id.* at 445. Defendant Juenger properly presented the will within the required statutory time frame. Point denied.

The LoPiccolos' second argument (Part B) under Point I alleges error because the trial court proceeded with Defendant Juenger's Third–Party Petition and Defendants John and Vickie Newman's Cross–Petition when none of these people had standing to file a will contest petition. Therefore, they argue the court lacked jurisdiction. We disagree.

■■■ "A heir, devisee, trustee or trust beneficiary under another purported will of the same decedent, ... is interested in the probate of a will for purposes of this section." § 473.083(1), RSMo.1986. A person who contests a will must either gain or lose under the contested will. *Mundwiller v. Mundwiller,* 822 S.W.2d 863, 864 (Mo.App.1991). Both groups were devisees under the 1987 will and gained or lost under the 1989 will. Accordingly, both Defendant Juenger and Defendants John and Vickie Newman had standing to contest the 1989 will. Point denied.

The LoPiccolos' last argument (Part C) within Point I claims the trial court erred when it proceeded with the Newmans'

Cross–Petition because it was filed late. The LoPiccolos argue the Newmans filed their Cross–Petition more than six months after the date of probate or the first publication of the notice granting letters testamentary to Defendant Semar. Therefore, said Cross–Petition is not timely filed. We disagree.

The will contest statute provides alternative dates for filing such a contest.

Unless any person interested in the probate of a will appears within six months after the date of the probate or rejection thereof by the probate division of the circuit court, or within six months after the first publication of notice of granting of letters on the estate of the decedent, whichever is later, and, by petition ... contests the validity of a probated will, or prays to have a will probated which has been rejected ..., then probate or rejection of the will is binding.... § 473.083(1), RSMo.1986.

We have already noted that Defendant Juenger properly and timely presented the 1987 will to the probate court. Therefore, the Newmans' interests were brought before the court through the actions of Defendant Juenger. In a will contest, "[t]he opponent may choose to challenge the validity of the purported will and also attempt to establish another will in its place." *Kinder v. Brune,* 754 S.W.2d 946, 948 (Mo.App.1988). Furthermore, Defendant Juenger's and John and Vickie Newman's Answers also brought the 1987 will before the court according to § 473.083(7), RSMo.1986, which states:

If a timely petition is filed, it and the answer or answers thereto shall frame the issues of intestacy or testacy or which writing or writings constitute the decedent's will....

■■■ Additionally, courts have held that once jurisdiction exists concerning a will contest such as in the present case, it "extends to an investigation of every ground upon which the validity of the will might be assailed...." *Miller v. Munzer,* 251 S.W.2d 966, 971 (Mo.App.1952).

Therefore, we need not reach whether or not the Newmans filed their Cross–Petition

asserting the 1987 will too late according to § 473.083(1), RSMo.1986, because the issue of the 1987 will and document itself were already properly before the court. Point denied.

Under Point II, the LoPiccolos argue that assuming the trial court did have jurisdiction, it erred in admitting the 1987 will into evidence because: (1) no evidence was presented establishing the Testator signed the will in the presence of two witnesses; and (2) no evidence was presented establishing the two witnesses signed the will in the Testator's presence. Therefore, they argue, the 1987 will is invalid due to improper execution. First we note the LoPiccolos did not properly preserve this issue; however, we will review their assertion with which we disagree.

■ The notary for the 1987 will testified that when he arrived at the Testator's home on May 21, 1987, the witnesses were already present and three original wills of Testator were on a table. The two witnesses, the Testator and the Testator's wife, showed the notary identification which confirmed their identities. Some of the wills had already been signed by Testator. Testator acknowledged his signature to the notary, who told Testator to sign his name on a blank sheet of paper. The notary checked Testator's handwriting with that on the signed documents. The Testator then signed the rest in the presence of the two witnesses and notary.

The notary testified the witnesses to the 1987 will signed in his and in the Testator's presence. After the witnesses signed the wills, the notary notarized the documents. Both witnesses were deceased at the time of trial and, thus, did not testify.

■ The notary's testimony constituted sufficient evidence the 1987 will was properly executed. "Every will shall be in writing, signed by the testator, ... and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." § 474.320, RSMo. 1986. The statute does not require a testator to sign the will in the presence of witnesses. *Callaway v. Blankenbaker*, 346 Mo. 383, 141 S.W.2d 810, 816 (1940). We find no

error, plain or otherwise, in the trial court's admission of the 1987 will into evidence.

The LoPiccolos also argue the notary to the 1987 will was referring to a different joint will of Testator and his wife. This assertion is not supported by the evidence. Point denied.

Next we will address Defendant/Co–Appellant Semar's points on appeal. We need not address Points I and II, for they are essentially the same as discussed above. Therefore, we proceed directly to Defendant Semar's Point III.

■ In her third point on appeal, Defendant Semar alleges the trial court erred when it admitted a legal file and related testimony. She argues the file's proponents failed to properly qualify it as a business record, and therefore the file's contents were admitted in violation of the hearsay rule. We disagree. Defendant Semar's attorney made one blanket objection which targeted the entire file. The trial court never formally ruled on the objection. Seven exhibits consisting of portions of the legal file were admitted into evidence.

■ We ordinarily do not review an allegation of error resulting from a civil jury trial unless it has been presented to or expressly decided by the trial court. Rule 84.13(a). It is within our discretion, however, to review unpreserved plain errors which affect a party's substantial rights, but only if manifest injustice or a miscarriage of justice has resulted. Rule 84.13(c). The plain error rule does not exist to revive issues abandoned by oversight. *State ex rel. Missouri Hwy. and Transp. Comm'n v. Muegge*, 842 S.W.2d 192, 197 (Mo.App.E.D.1992). We rarely resort to using the plain error rule in civil cases. *Robertson v. Cameron Mutual Ins. Co.*, 855 S.W.2d 442, 447 (Mo.App.W.D. 1993). We find no plain error in the trial court's admission into evidence of the portions of the Hyatt legal file. Point denied.

■ Defendant Semar argues under Point IV that the trial court erred when it admitted the testimony of a Hyatt Legal Services attorney, Steven Bain, because his testimony amounted to speculation and legal conclusions. Defendant Semar charges Bain

with making legal conclusions at trial and argues, "Mr. Bain did not base his conclusions upon any facts but rather upon speculation and conjecture." However, Bain never presented any legal conclusions. He was not called as an expert witness and did not testify as such. Bain did not testify Defendant Semar exerted undue influence. In fact, he readily admitted he never met any of the parties involved at trial.

After the 1989 will's execution, Bain was reviewing Hyatt files and came across Testator's file. Based only upon the 1989 will and the files he reviewed, he believed undue influence may have been a factor. Because of this concern, he placed a telephone call to Testator's home. Defendant Semar would not allow Bain to speak with Testator, "saying she had the power of attorney." Bain then separately wrote a letter to both Defendant Semar and Testator recommending they each independently seek legal review of the 1989 will. Neither party responded to the letters.[3] Defendant Semar testified at trial she could not remember receiving the letter.[4]

Bain never testified undue influence occurred. He stated he was concerned it may have occurred. This concern prompted him to further investigate the matter and attempt to speak with Testator. Bain testified his concerns were merely speculation. This properly admitted evidence, and the important surrounding circumstances of Defendant Semar keeping Testator away from anyone (including Bain) who may advise him to redraft a new will, provided valid and credible evidence from which a jury could decide Defendant Semar exerted undue influence upon Testator. Point denied.

■■■■■■ Defendant Semar's fifth and final point on appeal states the trial court erred when it denied her Motion for a Directed Verdict at the close of Plaintiffs' evidence because Plaintiffs did not prove undue influence. We disagree. When reviewing a trial court's refusal to direct a verdict for defendant, we review the evidence and all reason-

able inferences in the light most favorable to plaintiff. *Schaffer v. Bess,* 822 S.W.2d 871, 876 (Mo.App.1991). If reasonable persons could draw different conclusions from the facts presented, a trial court may not grant a directed verdict. *Id.* If plaintiff introduced substantial evidence which tends to prove those facts necessary to recover, a directed verdict for defendant is not proper. *Id.*

■■■■■■ To establish a presumption of undue influence in a will contest proceeding and present a submissible case, substantial evidence must be produced showing: (1) a confidential or fiduciary relationship existed; (2) a substantial benefit has been given to the fiduciary; and (3) activity by the fiduciary which resulted in the execution of the will. *Burke v. Kehr,* 876 S.W.2d 718, 721 (Mo.App. E.D.1994). Other factors which may be considered are the presence of deteriorated physical or mental health of testator, any opportunities the fiduciary may have had to influence the testator, whether the new will disposes of property in an unnatural manner, and if the bequests within the new and challenged will represent a change from a former will. *Jones v. Walker,* 774 S.W.2d 532, 534 (Mo.App.1989).

■■■■ Plaintiffs presented substantial evidence which established the three elements of the initial test by which one may show undue influence. Additionally, Plaintiffs presented substantial evidence covering every additional factor which may be considered. The trial court did not err when it denied Defendant Semar's Motion for Directed Verdict at the close of Plaintiffs' evidence. Point denied.

We affirm.

CRANE, P.J., and CRANDALL, J., concur.

---

**3.** It is important to remember Defendant Semar lived with the elderly Testator. Testator had previously suffered a stroke, was paralyzed on one side, and could not move around. The Testator experienced memory problems, and Semar controlled virtually all of his affairs.

**4.** Prior to Bain's letter to Defendant Semar (but also after the 1989 will was executed), another Hyatt attorney wrote her requesting to meet with Testator. This attorney never received any response from Defendant Semar, who likewise claimed at trial she could not remember receiving this attorney's letter.