**Arthur FLOYD and Emma Floyd, Appellants,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, and Griesedieck-Western Brewery Company, a Corporation, Respondents.**

No. 44468.

Supreme Court of Missouri.

Division No. 1.

May 9, 1955.

Motion for Rehearing or to Transfer to Court en Banc Denied June 13, 1955.

Glennon T. Moran, Herman M. Katcher, Sherman Landau, St. Louis, for appellants.

Lloyd E. Boas, Lester F. Stephens, St. Louis, for respondent St. Louis Public Service Co.

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondent Griesedieck-Western Brewery Co.

·HOLMAN, Commissioner.

Plaintiffs (appellants) instituted this action seeking to recover $15,000 damages from defendants St. Louis Public Service Company and Griesedieck-Western Brewery Company (respondents) for the death of their minor son, Francis Floyd. The verdict of the jury was in favor of both defendants. Plaintiffs have appealed.

Francis, then 15 years old, was instantly killed at about noon on October 10, 1952, while riding his bicycle westwardly in the 6500 block of Delmar Boulevard in University City, Missouri, on his way home from school for lunch.

We will attempt to state such facts as may be necessary for an understanding of the issues determined herein. There is considerable conflict in the testimony as to just what occurred immediately preceding the tragedy. An effort will be made to point out the more important discrepancies.

A truck, headed west and belonging to the defendant Brewery Company, was parked on the north side of Delmar Boulevard almost in front of the House of Liquors, for the purpose of making a delivery. The

driver of the truck testified that the front end was 2 feet from the curb and the outside rear dual wheel was from 6 inches to one foot away. Other witnesses stated that it was parked in the usual manner and a number of others had it farther in the street, some saying that it appeared to be double-parked. The bus operated by the other defendant was traveling west following a straight course. The deceased was also riding his bicycle in a westerly direction. According to most of the witnesses, the bus was passing the boy as he was alongside the beer truck. The witnesses vary considerably in their estimate of the distance between the bus and truck, the minimum being 2 feet and the maximum fixed at 6 feet.

It appears that at this point the youth became confused or excited and the bicycle "wobbled" and he turned into or fell against the bus about midway between the front and rear. The force of this contact apparently knocked him into the truck and he then fell into the street and the rear wheel of the bus passed over his head. This version of the manner of death was substantiated by evidence of considerable blood on the wheel of the bus. However, Mr. and Mrs. Thomas, who were in a car immediately behind the bus, testified positively that the bus did not run over the boy. Each of them stated the lad apparently started to go around the rear of the bus and his bicycle became entangled with some part of the bus, thus throwing the deceased into the truck. They further said that his head struck the truck with considerable force and he then fell motionless to the pavement.

There was some testimony to indicate that the driver of the bus did not sound a warning as he approached and passed the deceased upon the bicycle. It appears from the transcript that the driver of the bus was in the courtroom during the trial but was not called as a witness.

The instructions given at the request of plaintiffs predicated the liability of defendant Public Service Company upon a finding that said defendant failed to keep a lookout and failed to swerve said bus to the south as it overtook said child and thereby failed to allow sufficient clearance between the bus and said child, and further failed to sound a timely warning of the approach of said bus. The submission against defendant Brewery Company required a finding that said defendant's truck was not parked parallel with the curb and was not parked as close to the right side of the street as practicable.

During the course of the trial the plaintiffs offered in evidence the following sections of an ordinance of University City:

"Section 1001.1 Definitions: Wherever in this Article the following terms are used they shall have the meanings respectively ascribed to them in this section. * * * Roadway: That portion of a street or highway between the regularly established curb lines or that portion improved and intended to be used for vehicular traffic. * * * Driver: The driver of any vehicle, except a motor vehicle, including the rider of a horse or other animal and the rider of a bicycle. *Section 1001.32* Standing or Parking Close to Curb: (a) Except when necessary in obedience to traffic regulations or traffic signs or signals, the operator of a vehicle shall not stop, stand or park such vehicle in a roadway other than parallel with the edge of the roadway, headed in the direction of traffic, and with the curb-side wheels of the vehicle within one foot of the edge of the roadway * * *. *Section 1001.53* Overtaking a Vehicle: * * * An operator or driver overtaking and desiring to pass a vehicle shall sound his signaling device, and the operator or driver of the vehicle so overtaken shall promptly, upon such signal, turn his vehicle as far as reasonably safe and possible to the right in order to allow free passage on the left of his vehicle. * * *"

Plaintiffs had pleaded these sections in their petition and alleged the violation thereof, together with certain assignments of common-law negligence. When the offer was made, various grounds of objection were interposed by each defendant. The court indicated that it was about to overrule

the objections when it developed that plaintiffs did not intend to submit the case to the jury upon the issue of negligence based upon a violation of this ordinance, as indicated by the following:

"Mr. Moran: Well, at this time, plaintiff requests that he be allowed to read to the jury the ordinances, the portions of the Municipal Code of University City which were set out in the record yesterday.

"The Court: It is not your intention, is it, to instruct or to go to the jury on violation of the ordinance?

"Mr. Moran: At the present time, it is not my intention to go to the jury on violation of the ordinance.

"The Court: In view of the fact that it is not the intention of counsel to go to the jury or offer instructions on the violation of the ordinance, the objection will be sustained."

■ Plaintiffs now contend that the ordinance should have been admitted in evidence. With this we agree. It is well settled that, in an action based upon common-law negligence, an injured party may prove a violation of an ordinance as tending to prove negligence on the part of the defendant or in an effort to disprove the defense of contributory negligence. Wells v. Henry W. Kuhs Realty Co., Mo., 269 S.W.2d 761; White v. Hasburgh, Mo.App., 124 S.W.2d 560; Hart v. Skeets, 346 Mo. 1118, 145 S.W.2d 143; McPherson v. Premier Service Co., Mo.App., 38 S.W.2d 277.

Any evidence offered by plaintiffs which tended to prove negligence on the part of the defendants in the respects pleaded, or want of negligence on the part of decedent, was competent and should have been admitted. There was evidence that the defendant Brewery Company had violated Section 1001.32(a) in parking its truck. Likewise, there was evidence that the driver of the bus did not sound his signaling device as required by a portion of Section 1001.53. The plaintiffs were entitled to have the jury know the provisions of this ordinance as evidence tending to prove that the conduct

of the defendants in these respects was negligence. They were material upon the very issues upon which plaintiffs elected to submit the case to the jury. Moreover, each defendant contended that the deceased was guilty of contributory negligence in turning his bicycle into the right side of the bus. Proof that the defendants had violated the applicable sections of the aforementioned ordinance would be material upon the issue as to the alleged negligent conduct of the deceased under the circumstances.

■ The defendant Brewery Company argues that the court properly refused to admit in evidence the section of the ordinance relating to parking because it conflicts with the statute which requires that vehicles be parked as near the right-hand side of the highway as practicable. There is no merit in this contention. Municipalities are given authority by statute to "regulate the parking of vehicles on streets * * * by the adoption of any * * * regulatory method that is reasonable." Section 304.120, subd. 2(5) R.S.Mo 1949, V.A.M.S. While the ordinance under consideration was more specific than the statute, it was certainly valid as a reasonable exercise of the authority granted to University City under said statute.

■ Defendant Public Service Company contends that the section of the ordinance requiring a driver to signal when desiring to pass a vehicle was properly excluded because there was no evidence showing a situation which the ordinance covered. Specifically, it is urged that there is no proof that the bicycle was ahead of the bus and that the driver of the bus was in the act of overtaking and desiring to pass the deceased upon the bicycle, and hence there would have been no duty to sound a signal. We cannot agree with this assertion. Mrs. Hartman testified that she observed the incident from the show window of her store located next door to the House of Liquors. She related that she first noticed the parked truck; that she then observed the boy riding west on his bicycle; that as the bicycle was disappearing behind the

truck the bus came into view and began to pass the deceased. Furthermore, there was considerable testimony that the bus was traveling faster than the bicycle and, since the boy was observed at various points along the right side of the bus, there would be a clear inference that the bus was overtaking and passing the bicycle. However, regardless of this latter inference, we consider the testimony of Mrs. Hartman as direct and positive evidence of that fact.

■ Each of the defendants separately contend that plaintiffs failed to make a submissible case against such defendant and hence the judgment was for the right parties and should be affirmed. It is true that in most cases alleged trial errors are immaterial if no case was made for the jury. In reviewing this assignment we view the evidence, and legitimate inferences to be drawn from it, in a light most favorable to plaintiffs. O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248. The contention of the defendant Public Service Company is that there was a failure of proof that deceased was ever in front of the bus and that he was overtaken by the bus, and hence there was no proof that the opportunity existed for the operator to swerve the bus or warn the youth. We have substantially disposed of this point in the preceding paragraph and need not restate the evidence here. Considering the testimony of Mrs. Hartman together with the other evidence in the case, in the light most favorable to plaintiffs, we have concluded that it was sufficient to authorize a submission of failure to swerve and to give a timely signal of the approach of the bus.

The Brewery Company urges that no submissible case was made against it for the reason that there was no causal connection between the alleged improper parking and the casualty. In support of this assertion, this defendant cites Dickerson v. St. Louis Public Service Co., Mo.App., 271 S.W.2d 201, and Smith v. Mabrey, 348 Mo. 644, 154 S.W.2d 770. We will not consider the Dickerson case, as it has been transferred to this court and will be heard and decided anew in the future. The facts in the Smith case are quite different than in the instant case. There, a child was struck by an automobile while crossing the street. She was crossing the street in order to walk upon a good sidewalk, it appearing that the defendant city had failed to maintain a proper sidewalk upon the other side. It was held that the negligence of the city was not a proximate cause of the injury. It is obvious that the negligence complained of there was far more remote than that of the Brewery Company in the instant case.

■ Generally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant. The negligence of the defendant need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted. A party is held liable if his negligence, combined with the negligence of others, results in injury to another. Gray v. Kurn, 345 Mo. 1027, 137 S.W.2d 558; Domitz v. Springfield Bottlers, Inc., 359 Mo. 412, 221 S.W.2d 831.

■ For the purpose of determining this question, we must consider that the defendant Brewery Company parked its truck with the right side thereof about 6 feet from the curb. The evidence discloses that the traffic at this point on Delmar Boulevard was very heavy at noon. There is evidence to justify the conclusion that the death of the boy would not have occurred had there been more clearance between the parked truck and moving bus. We think it is not unreasonable to say that the negligence of the Brewery Company, in parking the truck so far out in the street, created a dangerous situation under the circumstances in evidence, which combined with the negligence of the Public Service Company to cause the injury and death of the deceased. The evidence was sufficient

to justify the submission of that issue to the jury. Domitz v. Springfield Bottlers, Inc., supra; Kuba v. Nagel, Mo.App., 124 S.W.2d 597.

We will not extend this opinion by a discussion of other trial errors complained of by the plaintiffs, as such alleged errors will not likely occur upon a retrial of this cause. If they desire, defendants will have the opportunity to re-examine the instructions given at their request and make such corrections as they may think necessary in view of the attack made thereon by plaintiffs upon this appeal.

The judgment is reversed and cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.