Margaret SCHAFFER, et al. Plaintiffs/Respondents/Cross–Appellants,

v.

James L. BESS and State Farm Mutual Automobile Insurance Company, Defendants/Appellants/Cross–Respondents.

Margaret SCHAFFER, Next Friend for Julie SCHAFFER and Edward Schaffer, Plaintiffs/Cross–Respondents,

and

Martha Schaffer, Successor Next Friend for Julie Schaffer and Edward Schaffer, Plaintiffs/Cross–Appellants,

and

Michelle Schaffer Brickeen and Robin Schaffer Sillman, Plaintiffs,

v.

James L. BESS and State Farm Mutual Automobile Insurance Company, Defendants.

Nos. 58714, 58736 and 58769.

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 15, 1991.

---

Michael R. Swafford, Rochelle Kaskow-
itz, St. Louis, for defendants/appel-
lants/cross-respondents.

Randall D. Sherman, Hillsboro, John Hughes, St. Louis, Robert G. Kister, Festus, for plaintiffs/respondents/cross-appellants.

STEPHAN, Judge.

Defendant/Appellant/Cross–Respondent State Farm Mutual Automobile Insurance Company ("State Farm") appeals from the trial court's order denying State Farm's motion for a directed verdict at the close of all evidence. State Farm contends that the plaintiffs/respondents/cross-appellants failed to prove a direct and proximate causal relationship between the acts or omissions of an uninsured motorist, David Friese, and the accident between James L. Bess and plaintiffs'/respondents'/cross-appellants' decedent, Richard Schaffer. Plaintiffs/Respondents/Cross–Appellants: Margaret Schaffer, the widow and third wife of Richard Schaffer; Julie and Edward Schaffer, the minor children of Richard Schaffer by his second marriage; and Michelle Schaffer Brickeen and Robin Schaffer Sillman, the adult children of Richard Schaffer by his first marriage, appeal the dismissal of their claim against State Farm for vexatious refusal to pay damages pursuant to Section 375.420, RSMo 1986, and Section 375.296, RSMo 1986. Finally, plaintiffs/cross-appellants Julie Schaffer and Edward Schaffer, by their successor next friend, Martha Schaffer, appeal from the trial court's judgment in which the trial court: (1) found that a contract existed between Julie Schaffer, Edward Schaffer and the attorney for plaintiff/cross-respondent Margaret Schaffer; and (2) ordered Julie Schaffer and Edward Schaffer to pay $21,333.33 to said attorney.

Sometime after 4:00 p.m. on the gray, rainy afternoon of November 16, 1987, David Friese drove eastbound on Buck Creek Road towards its intersection with Highway 67. Friese wanted to make a left-hand turn onto the highway so that he would be headed north. Whether Friese came to a complete stop before attempting the left-hand turn is unclear. What is clear is that when Friese attempted his left-turn, his car collided with John Nappier's pickup as Nappier headed north. Nappier's vehicle crossed over the median and came to rest on southbound Highway 67, facing north. Friese's car came to rest on the shoulder of northbound 67.

After the collision, both Friese and Nappier exited their vehicles. A witness to the accident, Wallace Wills, also pulled over and exited his vehicle. Nappier thereafter climbed over the median and approached Friese, screaming obscenities. Wills tried to calm Nappier down. Wills told Nappier to go back to his truck and to move it out of the southbound passing lane. Nappier followed Wills' instruction by backing up his pickup. There is some controversy over where Nappier parked his pickup. Both Friese and Nappier contend that Nappier backed his truck into the left-turn lane of southbound Highway 67. Friese further contends that traffic was able to slowly flow through the accident scene. Nappier asserts the flow of traffic resumed to pretty much normal speed. However, two witnesses to the accident contend that Nappier's vehicle was at least partially blocking the passing lane. Wills contends that Nappier's vehicle was taking up at least two feet of the passing lane. Another witness, Ronnie Akers, contends that Nappier's vehicle was blocking about one foot of the southbound passing lane.

After Nappier parked his truck, he walked over to the northbound shoulder to exchange insurance information with Friese. Although Friese thought that he was insured at the time of the accident, he later discovered that his family's policy did not cover him.

As Nappier and Friese exchanged information, other minor accidents occurred farther north of the Nappier–Friese collision in the southbound lanes of Highway 67. Although traffic had temporarily backed up, vehicles were moving slowly through the Nappier–Friese wreckage. Subsequently (estimates of the time sequence range from more than a couple of minutes to at least fifteen minutes), James Bess, who was traveling in the passing lane of southbound Highway 67, and Ronnie Akers, who was traveling in the travel lane of

southbound Highway 67, each approached the Buck Creek Road Intersection. At that time, both drivers were traveling at approximately fifty miles per hour. Bess saw a green Buick approximately 500 feet in front of him. Initially, he could not tell how fast the Buick was traveling. When Bess was approximately 400 feet from the Buick, he realized that: (1) the Buick was traveling much more slowly than he was; and (2) there was a pickup truck in the southbound left-turn lane facing north. Therefore, Bess applied his brakes. Although Bess intended that the application of the brakes would stop his vehicle, he felt that he actually picked up speed as he applied his brakes. Bess subsequently hit both the green Buick that Richard Schaffer was driving, and Nappier's pickup. Although Bess contends that he struck Schaffer's automobile first and then hit Nappier's vehicle, Friese, who witnessed the accident, contends that Bess struck Nappier's truck in the passing lane first, and then ricocheted off and hit Schaffer's car.

When Bess' vehicle struck Schaffer's Buick, the Buick was propelled over the median into the northbound lanes of Highway 67 where it impacted head-on with a white El Camino. Subsequently, ambulance attendants took Schaffer to Jefferson Memorial Hospital in Crystal City, Missouri. Doctor Brown pronounced Schaffer dead in the emergency room at 5:40 p.m.

Plaintiffs: Margaret Schaffer, the widow and third wife of Richard Schaffer; Julie Schaffer and Edward Schaffer, the minor children of Richard Schaffer by his second marriage; and Michelle Schaffer Brikeen and Robin Schaffer Sillman, the adult children of Richard Schaffer by his first marriage, brought suit against James Bess, John Nappier and David Friese, for the wrongful death of Richard Schaffer. All plaintiffs also sued State Farm under the uninsured motorist provisions of three insurance policies that State Farm had previously issued to Richard Schaffer. The plaintiffs not only claimed entitlement to Richard Schaffer's uninsurance coverage, they also claimed State Farm vexatiously refused to pay them. Defendants Nappier and Friese were dismissed prior to trial. A three day jury trial ensued. At the close of all evidence, State Farm moved for a directed verdict based on a lack of sufficient evidence connecting the negligence of David Friese with the subsequent death of Richard Schaffer. The trial court overruled State Farm's motion. State Farm also moved for a directed verdict on plaintiffs' claim of vexatious refusal to pay. The trial court sustained this motion. Before the jury returned its verdict, all plaintiffs settled with Bess for $25,000. The jury returned a $500,000 verdict against defendants Bess and State Farm. It assessed liability at 45% against Bess and 55% against the uninsured motorist, David Friese. The $500,000 verdict was reduced to $150,000, representing the stacked policy limits of Richard Schaffer's uninsured motorist coverage, and entered judgment against State Farm.

On April 27, 1990, State Farm filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. On May 1, 1990, all plaintiffs filed a motion for a new trial on the issue of vexatious refusal to pay, together with a notice of hearing to be held on May 21, 1990. On May 21, 1990, the trial court took both motions under submission.

On June 8, 1990, the trial court held an apportionment hearing in order to disperse the total funds available ($175,000) to all plaintiffs and their attorneys. On July 17, 1990, the trial court overruled all motions for a new trial. The court awarded Robert G. Kister, attorney for Margaret Schaffer, Julie Schaffer and Edward Schaffer, $2,788.14 against the initial award in that Kister's expenses were beneficial to all plaintiffs. The court apportioned the remaining $172,211.86 as follows: (1) $11,-500.00 to Michelle Schaffer Brickeen; (2) $11,500.00 to Robin Schaffer Sillman; (3) $50,000 to Julie Schaffer; (4) $50,000.00 to Edward Schaffer; and (5) $49,211.86 to Margaret Schaffer.

The trial court further determined that plaintiffs Michelle Schaffer Brickeen and Robin Schaffer Sillman had a ten percent contingency contract with their attorney, John Hughes. The court assessed attor-

ney's fees of $2,300.00 plus $2.00 costs for a total of $2,302.00 in favor of John Hughes. The court then addressed the $149,211.86 awarded to Margaret Schaffer, Julie Schaffer and Edward Schaffer. The court found that Randall Sherman had a one-third contingency contract with Martha Schaffer, successor next friend and mother of Julie Schaffer and Edward Schaffer, and second wife of Richard Schaffer. It also found that Robert Kister had a one-third contingency contract with Margaret Schaffer, the widow and surviving spouse of Richard Schaffer, and next friend of both Julie Schaffer and Edward Schaffer. The court thereafter awarded $12,000.00 attorney's fees to Randall Sherman and $37,737.28 to Robert Kister to be paid $16,403.95 under his contingent fee contract with Margaret Schaffer as surviving spouse and $21,333.33 under his contract with Margaret Schaffer as next friend of Julie Schaffer and Edward Schaffer. Finally, the trial court ordered that: (1) the balance of the $33,333.34 be distributed to a duly appointed conservator of the estate of Julie Schaffer, a minor; (2) the balance of the $33,333.35 be distributed to a duly appointed conservator of the estate of Edward Schaffer, a minor; and (3) $32,807.91 be distributed to Margaret Schaffer. It is from this order and judgment that all parties appeal.

State Farm's sole point on appeal is that the trial court erred in failing to grant State Farm's motion for a directed verdict because plaintiffs failed to present substantial evidence that uninsured motorist Friese's failure to yield in the initial accident was the proximate cause of a later accident in which plaintiffs' decedent, Richard Schaffer, was killed. In support of this contention, State Farm argues that: (1) the initial collision had occurred some time earlier; (2) traffic was able to pass the scene of the earlier accident; and (3) Bess' negligence in colliding with Richard Schaffer was an independent intervening cause of Schaffer's death.

■ Where failure to grant a directed verdict for the defendant is the error asserted, we review the evidence presented at trial to determine whether or not the plaintiff introduced substantial evidence that tends to prove the facts essential to plaintiff's recovery. *Eichelberger v. Barnes Hosp.*, 655 S.W.2d 699, 704 (Mo.App.1983). If the plaintiff has introduced such substantial evidence, we will not find that the trial court committed reversible error. *Id.* In reaching this determination, we review the evidence in the light most favorable to the plaintiff, giving him the benefit of all reasonable inferences, and disregarding the defendant's evidence except as it aids the plaintiff's case. *Id.* If reasonable minds can draw different conclusions from the facts, causation questions are for the jury, and a directed verdict is not proper. *Id.* at 704–705.

■ Actionable negligence requires a causal connection between the conduct of the defendant and the resulting injury to the plaintiff. *Sirna v. APC Bldg. Corp.*, 730 S.W.2d 561, 564 (Mo.App.1987). If a causal connection exists, it is said that the negligence was the proximate cause of the injury. *Id.* If two or more persons are guilty of consecutive acts of negligence, closely related in time, as in the case at bar, there is a question as to whether one initial act of negligence was a proximate cause of the injury or whether there was an efficient, intervening cause. *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. banc 1990). The practical test of proximate cause is whether the negligence is an efficient cause which sets in motion the chain of circumstances leading to the plaintiff's injuries or damages. *Deskin v. Brewer*, 590 S.W.2d 392, 399 (Mo.App. 1979). The test is not whether a reasonably prudent person would have forseen the particular injury. *Smith v. Secrist*, 590 S.W.2d 386, 389 (Mo.App.1979), citing *Floyd v. St. Louis Public Service Co.*, 280 S.W.2d 74, 78 (Mo.1955). Instead, the test is whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant. *Id.* The defendant's negligence need not be the sole cause of the injury. *Id.* It is sufficient that it be one of the efficient causes thereof, without which the injury would not have occurred. *Id.* A

party is liable if his negligence, combined with the negligence of others, results in injury to another. *Id.*

An intervening cause is a new and independent force which so interrupts the chain of events as to become the responsible, direct, proximate and immediate cause of the injury, rendering any prior negligence too remote to operate as the proximate cause. *Metzger v. Schermesser,* 687 S.W.2d 671, 673 (Mo.App.1985). It may not consist of an act of concurring or contributory negligence. *Id.* Moreover, it may not be one which is itself a forseeable and natural result of the original negligence. *Jordan v. General Growth Dev. Corp.,* 675 S.W.2d 901, 903 (Mo.App.1984). Finally, the determination of substantiality and proximity of the causal relationship between negligence and injury is dependent upon the particular facts of the case. *Metzger v. Schermesser, supra,* 687 S.W.2d at 673. It is seldom that one decision controls another. *Id.*

Applying the above principles to these facts, we find that the plaintiffs introduced substantial evidence that tended to prove the facts essential to their recovery. As previously stated, the test is not whether Friese (or any reasonably prudent person) would have forseen Schaffer's particular injury. Instead, the test is whether, after the conclusion of all occurrences, Schaffer's injury appears to be the reasonable and probable consequence of Friese's act or omission. Here, Schaffer's injury was the reasonable and probable consequence of Friese's actions. When a person negligently makes a left-hand turn onto a busy highway and thereby causes a car to strike him, it is probable that multiple collisions will follow. It is particularly probable that other automobiles will collide with vehicles involved in the initial accident. Viewing the evidence in the light most favorable to the plaintiffs, here, the initial accident occurred when Friese negligently attempted a left-hand turn, thereby causing Nappier's northbound automobile to strike him. Nappier's vehicle crossed over the median and came to a rest facing north, in the southbound left-turn lane, at least par-

tially blocking the southbound passing lane. Bess thereafter struck Nappier's car, ricocheted off and struck Schaffer's car, propelling Schaffer's car over the median into oncoming northbound traffic where a white El Camino struck Schaffer's car head-on. Looking at Schaffer's injury after all occurrences transpired, it was probable. Thus, Friese's negligent turn, under the facts presented here, could be found to constitute an efficient cause, and hence *a* proximate cause which set in motion a chain of circumstances leading to Schaffer's demise.

Clearly, Friese's negligent act was not the sole cause of Schaffer's death. Rather, it was one of the efficient causes thereof (Bess' negligence constitutes another), without which Schaffer's death would not have occurred. Since a party is liable if his negligence, combined with the negligence of others, results in injury, Friese, and therefore State Farm, is liable. Thus, the trial court did not err in failing to grant State Farm's motion for a directed verdict. We, therefore, deny State Farm's point.

Plaintiffs'/Respondents'/Cross–Appellants' (Margaret Schaffer, Julie Schaffer, Edward Schaffer, Michelle Schaffer Brickeen and Robin Schaffer Sillman who are referred to collectively as "plaintiffs" for this point only) sole point on appeal is that the trial court erred in granting State Farm's motion for a directed verdict on plaintiffs' claim that State Farm acted vexatiously in denying their claim for uninsured motorist benefits. When we review a directed verdict for a defendant, we view the evidence and inferences in the light most favorable to the plaintiffs, disregarding all contrary evidence and inferences. *Sisters of St. Mary v. Blair,* 766 S.W.2d 773, 774 (Mo.App.1989). If, however, we determine that reasonable grounds support the directed verdict, we will affirm. *Id.*

Section 375.420, RSMo 1986, provides in pertinent part:

In any action against any insurance company to recover the amount of any loss under a policy of automobile ... insur-

ance except automobile liability insurance,[1] if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee, and the court shall enter judgment for the aggregate sum found in the verdict.

It is well-settled that to support the imposition of a penalty under this statute, the plaintiff must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. banc 1984). The existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence that the insurer's attitude was vexatious and recalcitrant. *Id.* Direct and specific evidence to show vexatious refusal is not required. *Id.* Rather, the jury may find vexatious delay upon a general survey and consideration of the whole testimony and all the facts and circumstances in connection with the case. *Id.*

■ Here, the only evidence the plaintiffs presented was that State Farm insured three of Richard Schaffer's vehicles and that Margaret paid the expenses related to Richard's death. The plaintiffs failed to present *any* evidence that State Farm refused to pay plaintiffs, let alone that its refusal was without reasonable cause or excuse. Quite simply, the plaintiffs did not meet their burden. Since the trial court did not err in not submitting to the jury the issue of whether State Farm vexatiously refused to pay damages to the plaintiffs, the plaintiffs' point is denied.

Plaintiffs/Cross–Appellants Julie Schaffer and Edward Schaffer, by their successor next friend Martha Schaffer, appeal from the trial court's order requiring them to pay a portion of Mr. Kister's fees, whom Margaret Schaffer, as Julie Schaffer's and Edward Schaffer's next friend, hired to represent herself, Julie Schaffer and Edward Schaffer. Julie Schaffer and Edward Schaffer, by their successor next friend Martha Schaffer, raise two points on appeal. We will address each point separately.

■ In their first point on appeal, Julie Schaffer and Edward Schaffer, by their successor next friend Martha Schaffer, argue that the trial court erred in determining that there were two concurrent contracts for their representation because such finding was against the weight of the evidence and misapplied the law in that the evidence demonstrated that the court appointed Martha Schaffer as "successor" next friend for the minor plaintiffs thereby terminating any and all authority granted to Margaret Schaffer to prosecute the underlying wrongful death action on the minors' behalf. Since the trial court itself took the issue of apportionment under submission, the appropriate standard of review is that enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Thus, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.*

Before we address this issue, an expansion of the facts is necessary. On December 7, 1987, the trial court appointed Margaret as the next friend for Julie Schaffer and Edward Schaffer. That same month, Margaret, pursuant to her authority as next friend, contracted with Pannell, Dodson & Kister to represent herself and the two minor children in their wrongful death claim. This contract stipulated that Mar-

---

**1.** We note that our brethren in the Southern District have thoroughly addressed the issue of whether automobile liability insurance includes uninsured motorist provisions. That court decided, and we agree, that uninsured motorist coverage is not automobile liability insurance and thus does not fall within the automobile liability insurance exception under Section 375.-420. *See Shafer v. Auto Club Inter–Ins. Exchange,* 778 S.W.2d 395, 398 (Mo.App.1989).

garet would pay thirty three and one-third percent of the amount the firm collected by compromise or by suit. On March 30, 1988, the same trial court appointed the children's mother, Martha Schaffer, as "successor" next friend for both Julie Schaffer and Edward Schaffer. Martha thereafter contracted with Wegmann, Gasaway, Stewart, Schneider, Dickhaner, Tesreau & Stoll, P.C. to represent her as successor next friend of Julie Schaffer and Edward Schaffer.

At the outset, we note that on December 7, 1987, when the trial court appointed Margaret as the next friend for Julie Schaffer and Edward Schaffer, Margaret had the authority pursuant to Section 507.182, RSMo 1986, to contract for and employ an attorney, upon a reasonable fee, including one contingent upon the outcome of such action or claim, and to incur reasonable expenses in the preparation and prosecution of such action. Thus, Margaret's employment of Mr. Kister on the minors' behalf was proper.

■ After these events transpired, however, the trial court appointed the minors' mother as the childrens' "successor" next friend. Neither party cited, nor could we find any Missouri case law where the trial court appointed a "successor" next friend. It is well-established that a "successor" is "one that succeeds or follows; one who takes the place of another who has left, and sustains the like part or character; one who takes the place of another by succession." Black's Law Dictionary 1431 (6th ed. 1990). Thus, when the trial court appointed Martha as "successor" next friend, Martha took the place of Margaret as Julie Schafer's and Edward Schafer's next friend, carrying with her both the function and authority to act on the minors' behalf. Pursuant to this authority, Martha properly employed Mr. Sherman of Wegmann, Gasaway, Stewart, Schneider, Dickhaner, Tesreau & Stoll, P.C. to represent Julie Schafer and Edward Schafer.

After the trial court appointed Martha as the minors' next friend, neither the trial court, upon its own motion, nor Martha, upon her own motion, sought to nullify the contract between Margaret, as next friend of Julie Schafer and Edward Schafer, and Mr. Kister. The trial court, therefore, concluded that there existed two concurrent contracts for the minors' representation. We agree. Although Martha's appointment as the minors' successor next friend supplanted Margaret's authority to prospectively act on the minors' behalf, it did not nullify Margaret's prior acts. Thus, Margaret's contract, as next friend of Julie Schafer and Edward Schafer, remained in full force and effect throughout these proceedings. We, therefore, conclude that the trial court did not err in determining that there existed two concurrent contracts for the representation of Julie Schaffer and Edward Schaffer. The minors' point, by their successor next friend Martha Schafer, is denied.

■ Julie Schaffer's and Edward Schaffer's second point, asserted by their successor next friend Martha Schaffer, is that the trial court erred in ordering them to pay a portion of the amount that the trial court awarded to them to the attorney Margaret, as the minors' next friend, hired to represent them because the trial court lacked jurisdiction to make such an order. As support for their position, the minors cite *Keene v. Wilson Refuse, Inc.*, 788 S.W.2d 324 (Mo.App.1989). In that case, Edgar Dean Keene died as the result of a collision between his auto and a truck owned by Wilson Refuse, Inc. Sharon Keene, Edgar's widow, retained the services of Dallas W. Cox, Jr., an attorney, to pursue a wrongful death action against Wilson Refuse. Sharon signed a one-third contingency contract on: (1) her behalf; (2) her son's behalf; and (3) Edgar's parents' behalf. Cox subsequently notified Edgar's first wife, Emily Keene, and Edgar's son from the first marriage, Aaron, of Aaron's right to maintain an action against Wilson Refuse because of his father's death. Emily and Aaron retained the services of Ronald L. Boggs, an attorney. They signed a one-third contingency contract with Boggs. Although Boggs filed motions, attended depositions and made appearances as necessary to represent Emily and Aaron, Cox alone

was responsible for the development and preparation of the liability aspects of the case. After the trial court approved a settlement offer, it ordered Aaron to pay one-third of his recovery to Cox as attorney's fees and 19.2 percent of the litigation expenses even though Aaron had not signed a contract with Cox. The trial court awarded no compensation to Boggs.

Our court reversed, holding:

Only 'if there is no contract, or if the party sharing in the proceeds has no attorney representing him' does the court have discretion to award a fee to the original plaintiff's attorney from the funds allocated to other sharing in the proceeds. Under the circumstances the clear language of the statute does not authorize an award of attorney's fees 'as the court deems fair and equitable.' *Ibid.*, 327.

In a footnote, we recognized that since Aaron accepted Boggs' representation after reaching majority, Section 507.184, RSMo 1986, which authorizes the court to exercise discretion in the approval of a contract between an attorney and a minor's next friend as part of a settlement of a minor's suit, had no application.

Julie Schaffer and Edward Schaffer argue that *Keene* stands for the propositions that: (1) Section 537.095.4(2), RSMo 1986, mandates the payment of attorney's fees as contracted; and (2) any issue pertaining to a comparison of services performed by different attorneys in a wrongful death action or pertaining to multiple claimants deriving benefit from the services of one attorney would not be viable on appeal. Although we agree that *Keene* stands for the first proposition, we disagree that it stands for the second. *Keene* addressed a situation where a minor, by his next friend, contracted with one attorney to represent him. Another attorney, with whom the minor, by his next friend, had not contracted, was responsible for the development and preparation of the liability aspects of the case. The trial court, having determined that the attorney with whom the minor, by his next friend, had not contracted had performed a majority of the work,

awarded that attorney, and not the minor's attorney, part of the minor's recovery. We determined that the minor's attorney had to be paid as contracted. Moreover, we determined that where a minor, by a next friend, has retained counsel to represent him, a trial court may not award attorney's fees, as it deems fair and equitable, to another attorney with whom the minor, by his next friend, has not contracted regardless of whether that attorney performed a majority of the work in obtaining the minor's award. We did not address the situation presented to us today—where the minors, by their next friends, have retained multiple attorneys, are they bound by the terms of their employment contracts?

In addressing this issue, the trial court wisely turned to Section 507.184.3, RSMo 1986. This section provides that the trial court has the power and authority to approve a fee contract between a next friend and an attorney. The trial court thereafter: (1) reduced the total amount to be paid from Julie Schafer's and Edward Schafer's recovery to one-third; and (2) allocated this third between two attorneys who successfully represented the minors in their wrongful death action. We now hold that where, as here, minors, by their next friends, have retained multiple attorneys, the trial court, pursuant to Section 507.184.3, may either uphold the employment contracts as written or may reduce the contracted fee and apportion attorney's fees as it deems fit. Thus, since the trial court's judgment is supported by substantial evidence, is not against the weight of the evidence and neither erroneously declares or applies the law, it is sustained. Julie Schafer's and Edward Schafer's point, by their successor next friend Martha Schafer, is, therefore, denied.

For the reasons stated, the trial court's judgment is affirmed.

SATZ, P.J., and AHRENS, J., concur.