David J. BENING; Alfred
W. Harre, Appellants,

v.

Arthur G. MUEGLER, Appellee.

No. 94–3933.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1995.

Decided Oct. 11, 1995.

---

Thomas G. Berndsen, St. Louis, MO, argued, for appellant.

Arthur G. Muegler, Scottsdale, AZ, pro se.

Before HANSEN, HEANEY, and MURPHY, Circuit Judges.

DIANA E. MURPHY, Circuit Judge.

Appellants David J. Bening and Alfred W. Harre sued Concepts Communication Management Corporation (Concepts) and three of its attorneys, including Arthur G. Muegler, to recover funds they had invested. The case went to trial against Muegler only, and the jury returned a verdict in his favor.[1] Bening and Harre appeal from the adverse judgment, alleging that the district court erred in its instructions to the jury and in denying their post-trial motions. We reverse and remand for a new trial.

## I.

Appellants, two Illinois farmers, invested a total of over $80,000 each in Concepts and a related limited partnership in 1988 and 1989. They allege that they made these investments in reliance on misrepresentations made by Muegler which directly caused the loss in value of their investments.

Concepts began as a fireworks wholesaler. It later branched out into cellular communications and paging systems and began holding small meetings for potential investors in 1988. Muegler, who was introduced as the former general counsel at Emerson Electric Company, spoke at many or all of these meetings and was attorney for Concepts during most of the relevant time period. According to evidence presented by appellants, Muegler repeatedly told potential investors that all funds invested in Concepts would be for the legitimate ongoing business purposes of the corporation. They also presented evidence that a prospectus prepared by Muegler for a meeting in September 1988 was misleading in that it indicated that Concepts had been restructured as a corporation and was in compliance with all applicable securities Illinois laws.[2] Concepts president James Grice, who was portrayed as a computer and communications expert, also frequently spoke at the meetings. In response to the sales talks by Muegler and Grice, Bening and Harre each invested roughly $20,000 in Concepts during calendar year 1988.

Appellants also presented evidence of another alleged misrepresentation by Muegler at a meeting in January 1989. This was that an anonymous individual from Illinois had invested in Concepts and that his investment was used to purchase equipment from Glenayre Electric. According to appellants, Muegler said Concepts, not the anonymous investor, would own the equipment. In fact, Concepts leased the equipment rather than purchasing it.

In February 1989, Concepts held another investor meeting, after which Muegler sold Bening and Harre on a new investment opportunity. For several months Concepts had been telling its investors that the secret investor from Illinois had political connections and could secure a large paging account from the state government in Springfield. Muegler now told Bening and Harre that the investor did not want to make the investment himself for political reasons and that the opportunity was available to appellants for $75,000 apiece. He also stated that their funds would be used to purchase the required equipment to service the pagers. Grice then said that this was such a great investment that he wanted part of it for himself. Eventually it was agreed that Bening and Harre would each contribute $60,000 and Grice would put in $30,000.[3]

---

1. Concepts was dismissed as a defendant before appellants filed their amended complaint in 1991; it appears the other two attorneys were dismissed as defendants in 1992.

2. Before Concepts was restructured, appellants had each invested several thousand dollars in the predecessor limited partnership. Their interest was converted into stock in Concepts.

3. Each appellant also purchased several thousand dollars of Concepts stock during 1989. This together with the $20,000 each invested in Concepts in 1988, and the $60,000 each invested in the Illinois limited partnership, made a total investment of over $80,000 each.

This investment was to be in a partnership distinct from Concepts. Concepts was to be the general partner, while Bening, Harre, and Grice were to be limited partners. The new partnership was to be called Concept–Tel (Concept Tele in some documents). Appellants made their $60,000 investments on March 11, 1989. The limited partnership agreement stated:

[Concepts], out of the $150,000.00 proceeds paid to it this date by the Limited Partners, shall design, install and deliver a "Turn Key" telephone answering and paging facility in Springfield, Illinois within the time and having the equipment and capacity set out on the attached Exhibit D. Title to said "Turn Key" facility shall be in Partnership.

Concept–Tel was never registered with the state of Illinois, however, and the required equipment was never installed. There is no evidence that the contract with the state ever existed, and Grice never contributed his $30,-000.

Rather than forming the limited partnership, Muegler and Grice issued sixty shares of Concepts class C stock to Bening and Harre, which was selling for $1,000 per share at the time. Muegler and Grice then, without informing Bening and Harre, applied their $120,000 contributed to the Concept–Tel limited partnership as collateral for a bank loan to Concepts, not Concept–Tel. An amount almost equal to the loan was eventually spent by Concepts to construct a gay bar in St. Louis.

Less than a week after appellants made their investment, Muegler and Grice met with a commercial lending officer at Citizens National Bank to discuss the loan to Concepts. Although the loan could have been used to fulfill obligations Concepts had as general partner in Concept–Tel, the lending officer testified that Grice and Muegler told him that the collateral for the loan came from the sale of shares in Concepts to two individuals. Muegler and Grice never informed the bank about Concept–Tel or the nature of the investment of Bening and Harre in a limited partnership. The loan was unrestricted, and no explanation was presented as to why funds for use in the communications industry were eventually used to renovate a gay bar.

The bar project was begun in October 1988. Muegler was present at the first meeting between Grice and the lessor of the building, and the appellants presented evidence at trial which could support an inference that Muegler was aware that Grice was spending corporate funds on the nightclub.

In December 1989, the police raided Concepts' office in St. Louis and arrested Grice, who as a convicted felon was prohibited from selling securities. There was evidence that Muegler knew that Grice was an ex-convict and that he later acknowledged he should have told appellants about his past. Grice was eventually convicted in Illinois for theft, deceptive practices, and unlawful sales of securities for his role in the Concepts scheme. Muegler was also indicted in Illinois, but the case against him was dismissed after judgment was entered in his favor in this matter.

Muegler allegedly had told appellants that Concepts owned the vital telecommunications equipment it used, but Concepts had actually leased the equipment from a company controlled by Gary Fears, the secret Illinois investor. After the police raid Fears exercised his rights under the lease and took control of the telecommunications equipment. Fears then effectively took over the corporation's operations and ran its business under a different corporate form. The other investors in Concepts were apparently left with no recourse since Concepts itself was left without assets, although Muegler did urge Fears to take their interests into account.

Appellants claimed they were damaged by Muegler's tortious conduct in that they lost the total value of their investments. Their evidence tended to show that their interests in Concepts became worthless when it lost its assets and its business operation and that their investment in the Concept–Tel limited partnership was diverted for other purposes. In their complaint they also sought punitive damages, costs, and attorney's fees.

Bening and Harre alleged both fraudulent and negligent misrepresentation by Muegler in this diversity action. Four counts of secu-

rities fraud in the original complaint were replaced by four counts of failure to disclose in a later amended complaint, which were dismissed by the district court because it found Muegler had no fiduciary duty to disclose information to Bening and Harre.[4] Muegler moved to filed counterclaims for malicious prosecution and abuse of process, but the district court denied the motion because Muegler had exercised his fifth amendment privilege and refused to answer any questions during his deposition.[5]

At the close of appellants' case in chief, Muegler moved for judgment as a matter of law, which was denied. Because Muegler had been late in submitting pretrial documents, the district court granted appellants' motion in limine to bar most of the sixty witnesses Muegler claimed he would call and much of his documentary evidence. The district court also granted the appellants' motion to prevent Muegler from testifying on his own behalf because he had exercised his fifth amendment privilege before trial. Muegler rested his case without presenting any of the evidence still available to him and moved again unsuccessfully for judgment as a matter of law. The case was presented to the jury which found for Muegler on all counts submitted.

## II.

The main focus of this appeal is on certain jury instructions given by the district court. It is undisputed that Missouri law governs the substantive legal issues. Appellants submitted four verdict directors [6] which summarized the alleged misrepresentations by Muegler as follows:

a) As of September 1988, when the Private Offering Prospectus was published, Concepts Communication had been restructured and was then in compliance with all applicable securities registration laws,

b) All of the funds invested by Plaintiffs into Concepts Communications would be used exclusively for the legitimate ongoing business purposes of Concepts Communication,

c) A person from the State of Illinois had invested a substantial sum of money into Concepts Communication and such money was used to purchase the Glenayre paging and computer equipment and that equipment was owned by Concepts Communication,

d) The money invested for the partnership interest for the central Illinois territory would be used exclusively for the legitimate development and business expenses of the partnership, or

e) The money Plaintiffs invested for the central Illinois territory was for a partnership interest[.]

Muegler requested that after each of these verdict directors were given, the jury be instructed that:

Your verdict must be for Defendant Muegler and against Plaintiff Bening [or Harre] if you believe that Plaintiff Bening's [or Harre's] investments in Concepts Communication Stock and the proposed partnership interest mentioned in the evidence became worthless as a direct result of the December 29, 1989 raid upon Concepts and the Fears take-over of Concepts circa January 2, 1990.

Muegler first identified these instructions as affirmative defenses. Appellants objected, however, because Muegler had not pled this causation theory as an affirmative defense as required under Missouri law. Muegler then requested that the instructions be given as affirmative converse instructions.[7] The court

---

**4.** The original complaint also alleged securities fraud which was not included in the amended pleading.

**5.** In Missouri, a defendant who asserts his fifth amendment privilege in an action may not seek affirmative relief in the same proceeding. *Geldback Transport, Inc. v. Delay*, 443 S.W.2d 120, 121 (Mo.1969). After his motion was denied, Muegler filed a malicious prosecution action in state court; it is still pending.

**6.** There were four verdict directors because the jury was asked to consider for each plaintiff both types of misrepresentation (common law fraud and negligent misrepresentation).

**7.** Affirmative converse instructions are recognized by Missouri law. *See Missouri Approved Instructions* §§ 33.01, 33.05(1). An affirmative converse instructs the jury regarding independent facts not contained in the plaintiff's verdict director, that if proven by the defendant, would

overruled appellants' objection at this point and gave the requested instructions.

Appellants argue that the district court erred by approving the affirmative converse instructions, numbers 11, 13, 18, and 20.[8] They contend that the instructions misstated Missouri law by allowing the jury to find for the defendant even if it concluded that his misrepresentations were a proximate cause of appellants' loss.

■■■ Muegler responds that the appellants failed to make a specific objection to the instructions at trial and therefore failed to preserve the issue for full review on appeal. When a specific objection is not made before an instruction is given, we review only for plain error. *Hughes v. Box*, 814 F.2d 498, 502–03 (8th Cir.1987); *see also* Fed. R.Civ.P. 51. When a specific objection is made, however, the instructions as a whole are reviewed to insure that they fairly and adequately state the substantive law on the issue raised. *American Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1139 (8th Cir.1986). If the objecting party can also demonstrate that it was prejudiced, a new trial is necessary. *See Fink v. Foley–Belsaw Co*, 983 F.2d 111, 113–14 (8th Cir. 1993).

Appellants objected to the instructions being admitted as affirmative converses and contended the defendant was free to argue the issue of causation from their verdict directors. An additional instruction was unnecessary and inappropriate. Appellants' counsel then began, "I don't think as a matter of law someone could possibly claim that the police arresting someone under—", when the judge interrupted the objection to rule in favor of the requested instructions. On this record we find the issues related to the affirmative converses to have been preserved, especially since the court ruled while counsel was attempting to elaborate on his objection.

■■■ On appeal Bening and Harre argue that the police raid and Fears' takeover of Concepts were not legally sufficient intervening events and in fact flowed from Muegler's misrepresentations. Under Missouri law only "a new and independent force which so interrupts the chain of events as to become the responsible, direct, proximate and immediate cause of the injury [will] render[ ] any prior negligence too remote to operate as the proximate cause." *Schaffer v. Bess*, 822 S.W.2d 871, 877 (Mo.App.1991); *Plummer v. Dace*, 818 S.W.2d 317 (Mo.App.1991). The practical test of causation is whether the plaintiff's damages appear to be "the reasonable and probable consequence of [defendant's] act or omission." *Id.*

In *Schaffer*, a driver caused an accident by negligently turning in front of another car. The defendant drove along minutes later and struck a vehicle that had slowed to pass the earlier accident, killing the driver. The Missouri court found that the third driver's death was caused in part by the first driver's negligence. The defendant's failure to slow down, although a cause of the second and fatal accident, was insufficient to break the chain of events started by the first accident. *Id.*

The situation in this case is analogous. Based on the evidence presented at trial, a jury could find that Muegler's representations to Bening and Harre caused them to make their investments in Concepts and the limited partnership. Even if the jury found that the appellants were not damaged until the raid, the raid was not a sufficient intervening event to break the chain of events begun by the alleged misrepresentations. Just as the Missouri court found that it is probable that an accident on a highway will cause other accidents, it is probable that misrepresentations to investors about how and by whom their capital will be used and its subsequent diversion will result in a reduction in value of their investments. This is true even though the precise cause of the

---

defeat the plaintiff's claim. In contrast, a true converse mirrors the language of the plaintiff's verdict director but substitutes "If you do not believe" or "Unless you believe" at the beginning and directs the verdict for the defendant. *Id.* §§ 33.01 *et seq.*

8. There were four affirmative converse instructions for the same reasons that there were four verdict directors. *See* n. 6, *supra.*

ultimate loss is not known when the misrepresentations are made.

In this case, the police raid and subsequent takeover by Fears logically flowed directly from the alleged misrepresentations. The evidence was sufficient to support a jury finding that Muegler knew or should have known that Grice was selling securities illegally. Muegler knew of Grice's criminal record, and the inference could be drawn that he knew that funds were being diverted to the nightclub and that Concepts leased the Glenayre equipment rather than owning it. The police action was a logical result of the alleged misrepresentations, especially in light of Grice's status as an ex-convict. Moreover, if Concepts had owned the equipment as Muegler allegedly had represented, Fears would not have been able to take over the operation of Concepts.

There was evidence that appellants' investment in Concept–Tel was diverted to renovation of real estate instead of being used for the Illinois paging equipment. Thus, the jury could have found that this loss occurred prior to the raid, making the affirmative converses particularly inappropriate. Because appellants were given stock in Concepts rather than the promised limited partnership interests, however, the issues of causation for this investment were complicated. Muegler actively participated in the process by which the $60,000 investments were used as collateral for a loan to Concepts, and he knew that they were given stock in Concepts instead of the limited partnership interests. The diversion of Concepts funds to the gay bar, in which Muegler also apparently played a role, preceded the raid and Fears' takeover and appeared unrelated.

■ The intervening events cited in the affirmative converse instructions were not sufficient as a matter of law to eliminate the misrepresentations as the possible proximate cause. There was not substantial evidence of a legally sufficient intervening cause to warrant giving the converse instructions. The wording of the four instructions required a verdict for Muegler if the raid was a "direct cause" of appellants' loss. A defendant is liable for his acts even if subsequent events also contribute to plaintiff's injuries. *Schaf-*

*fer*, 822 S.W.2d at 876–77. The affirmative converse instructions improperly took away the ability of the jury to consider whether Muegler's misrepresentations caused the losses. The instructions also forced appellants to attempt to prove that the misrepresentations were the sole cause of their loss. Proof of sole causation is not required under Missouri law. *Id.*

The instructions were confusing and misleading. *See Grogan v. Garner*, 806 F.2d 829, 837 (8th Cir.1986). Although the jurors could have concluded from the evidence that all elements of appellants' verdict directors had been satisfied, they could have felt compelled to find for Muegler by the limitation on causation in the affirmative converses. Such a contradiction is inconsistent with the purpose of an affirmative converse and is legally misleading. *See Hiers v. Lemley*, 834 S.W.2d 729 (Mo.1992) (en banc).

Considering the instructions as a whole, therefore, we conclude that the jury did not receive fair and accurate instruction on the law of Missouri regarding causation. Because the affirmative converses incorrectly stated the law and misled the jury, giving them was prejudicial error and a new trial is necessary. *See Fink v. Foley–Belsaw Co*, 983 F.2d 111, 113–14 (8th Cir.1993); *Fischer v. Red Lion Inns Operating L.P.*, 972 F.2d 906, 910 (8th Cir.1992).

Our conclusion that the instructions were improper and require a new trial is supported by *Hiers*. In that case, the Missouri Supreme Court sitting en banc stated that affirmative converse instructions are disfavored and are only appropriate where "used by a defendant to submit an ultimate issue that was erroneously excluded from plaintiff's verdict director." 834 S.W.2d at 736; *see also McGowne v. Challenge–Cook Bros., Inc.*, 672 F.2d 652, 663 (8th Cir.1982). The court also concluded that its earlier approval of an affirmative converse instruction in *Wilson v. Checker Cab Co.*, 431 S.W.2d 122 (Mo. 1968), was suspect because that instruction violated "a fundamental rule of our scheme of approved instructions" in that it prevented full consideration of the causation issues unlike "the verdict directing instruction or a true converse." *Hiers*, 834 S.W.2d at 736.

Muegler argues that appellants' losses were caused by the raid and Fears' subsequent takeover, not any of the alleged misrepresentations. The verdict directors clearly provided that the jury had to find misrepresentations were the direct cause of appellants' losses in order for them to prevail. These verdict directors, or true converse instructions in response to them, would have permitted full consideration of all causation issues and all parties' arguments based on the evidence. *Id.*

### III.

 Muegler argues that even if the converse instructions were improper, appellants were not prejudiced because they failed to state a prima facie case of misrepresentation. Muegler contends that the alleged misrepresentations are not actionable because they were future promises. Under Missouri law, however, fraud can be based on an intention not to perform a promised action. *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1497–98 (8th Cir.1984) (applying Missouri law); *Sofka v. Thal,* 662 S.W.2d 502, 507 (Mo. banc 1983). The jury could find, for example, that when Muegler told appellants they would receive a limited partnership interest in Concept–Tel in exchange for their $60,000 investments, he already knew they would be given Concepts stock instead. We also note that several of the alleged misrepresentations, most notably the one regarding ownership of equipment by Concepts, were clearly statements of existing fact.

 Muegler also contends that appellants could not have reasonably relied on any of the alleged misrepresentations because the Concepts prospectus explicitly stated that investors were not relying on any representations outside the prospectus. We reject this argument. First, it does not apply to the alleged misrepresentations regarding the limited partnership, which was not governed by the prospectus. Second, when a fraudulent misrepresentation is used to induce entry into an agreement which then purportedly shields the declarant from the fraud, the contractual disclaimer will not bar an action for fraud. *Tietjens v. General Motors Corporation,* 418 S.W.2d 75, 80–82 (Mo.1967) (oral statement to plaintiff by defendant's agent actionable despite application's requirement for written approval); *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1498 (8th Cir.1984) (no duty to investigate where "the fraud consists of a positive representation intended to induce the very conduct which then results." (quoting *Alexander v. Sagehorn,* 600 S.W.2d 198, 201 (Mo.App. 1980))). It would be inequitable and inconsistent with Missouri law to allow Muegler to avoid liability by a disclaimer after allegedly inducing appellants' investments through misrepresentations.

Muegler makes several other arguments regarding the sufficiency of appellants' prima facie case which are without merit. Because appellants presented evidence of actionable misrepresentations that reasonably could have led the jury to return verdicts in their favor, they have made the required showing that they were prejudiced by the confusing and misleading jury instructions.[9] *See Fischer v. Red Lion Inns Operating L.P.,* 972 F.2d 906, 910 (8th Cir.1992).

### IV.

In sum, the giving of the affirmative converse instructions was reversible error and requires a remand for a new trial. These instructions misstated the law of causation in Missouri and therefore confused the jury. They also conflicted with appellants' verdict directors by introducing additional facts, and were inappropriate under Missouri law because the verdict directors were sufficient to permit full argument on causation and they could have been supplemented by true converse instructions. Accordingly, the judgment of the district court is reversed, and the

---

**9.** These conclusions dispose of some other points raised on appeal. Appellants' argument that the district court abused its discretion by denying their motion to alter or amend the judgment or for a new trial is also based on the affirmative converse instructions and need not now be addressed. The conclusion that the appellants presented sufficient evidence so that a jury could have found for them also resolves Muegler's claim that their appeal is frivolous.

case is remanded for a new trial.[10]

10. Whether Muegler made one or more of the misrepresentations included in the verdict directors, whether appellants reasonably relied on them, and whether the representations were the proximate cause of their loss are matters for the jury in the new trial. The record does not permit remand for entry of judgment in favor of appellants as a matter of law.